13007

COGSDILL v. METROPOLITAN LIFE INSURANCE CO.

(155 S. E., 747)

September, 1929.

*Messrs. Carlisle, Brown ·& Carlisle,* and *J. A. Sawyer,* for appellant,

*Messrs. John K. Hamblin* and *Barron, Barron & Barron,* for respondent,

October 18, 1930.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This is an action on a group policy of insurance issued by the appellant on the lives of the employees of the Woodruff Cotton Mills. The complaint alleges that on December 20, 1927, one Floyd Cogsdill died, being at that time an employee of the mill and insured under the policy; that the plaintiff was his wife and the beneficiary of his insurance; and that the defendant was indebted to her under the terms of the policy, in the sum of $800.00 and interest from the date of her husband's death. The defendant answered, alleging that on September 12, 1927, Cogsdill's employment was terminated and the insurance, theretofore in force on his life automatically lapsed, and that the defendant was re-

leased from any further liability of any kind on account of such insurance A further defense was that even if the insurance had been of force at the time of Cogsdill's death, no proof of his death had been received by the defendant at its home office in the City of New York, as required by the terms of the policy as a condition precedent to the payment of any insurance thereunder.

The case was tried at the September, 1929, term of the Court of Common Pleas for Union County, before Hon. R. T. Wilson, Special Judge. At the close of all the testimony, the defendant made a motion for a directed verdict which was refused by the Court. The jury found for the plaintiff the sum of $670.00. Two questions only are presented by the appeal: (1) Did the Court err in overruling the motion for a directed verdict? (2) Was interest recoverable on the amount of the insurance benefits from the date of the death of the insured, as charged by the Court?

As to the first question: The motion for a directed verdict was made upon the ground that the only reasonable inference to be drawn from the evidence was that Cogsdill was not covered by the group policy insurance at the time of his death on December 20, 1927, for the reason that his employment by the mill had terminated on September 14, 1927, and that he had not completed three months' continuous employment from the date of his re-employment on October 6, 1927, so as to make himself eligible, the same as a new employee, for insurance under the group policy according to its provisions.

It is not disputed that Cogsdill was in the employ of the Woodruff Mills for a number of years prior to September 14, 1927, and at that date was covered, as such employee, by the group policy insurance; that on that date he quit work and went away, but returned some days later and again became engaged in work at the mill. The plaintiff testified that her husband was absent from his work about ten days for the purpose of making a visit to relatives; that in going away

for such he had not quit his employment, but immediately resumed work in the mill upon his return; that he had previously made similar visits while an employee of the mill; and that such visits were not unusual among the mill employees. Other testimony tended to show that Cogsdill worked in the mill as a doffer both before his visit and after his return. There was testimony for the defendant to the effect that the mill regarded Cogsdill's leaving as a severance of his connection with it as one of its employees and notified the defendant insurance company accordingly; and that his status, upon his subsequent employment, was that of a new employee. There was no testimony that the mill notified Cogsdill that his employment was terminated or attempted to exercise any right it might have had to discharge him.

The trial Judge, in refusing the motion, made the following clear comment:

"I don't believe the insurance company nor the mills had it in mind that no one should go on a visit, but that from morning after morning, day in and day out, during the year, they must be continuously on the job, and I think from this testimony there is a question of fact as to whether or not this party went on a visit or whether or not there was a termination of employment. I say, I think the jury will have to pass on that, because I can't think continuous employment prevents one taking a visit, if there was a visit."

We think that the Court was right in refusing to direct a verdict. In passing upon defendant's motion he was bound to consider the testimony most favorable to the plaintiff. Under all the facts and circumstances as disclosed by the record, he could not say, as a matter of law, that Cogsdill's employment was terminated by his leaving the mill, and correctly submitted that question to the jury.

As to the second question, exception is taken to the charge of the trial Judge that the plaintiff would be entitled to recover interest from the date of insured's death on any

amount the jury might find to be due her under the policy. Where the amount to which the plaintiff is entitled ▮ is wrongfully withheld by the insurer after payment is due, interest on such amount may be allowed as damages in an action on the policy, to be calculated from here provided that payment should become due upon receipt by the company of due proof of the death of the insured. No formal proof of death was made, but the company denied all liability and refused payment, thus rendering such proof unnecessary and fixing the due date for payment in case of liability. The evidence does not disclose the date of the defendant's denial of liability, but clearly such denial was made before the commencement of the action. By their verdict, the jury indicated that the plaintiff was entitled to interest; but under the charge of the Court, they computed the interest from the death of the insured, December 20, 1927. In view of these circumstances, the appellant cannot complain if it be required to pay interest on the amount found, from the date of the commencement of the action, January 25, 1928, instead of from an earlier date. We think, therefore, that the appellant should have remitted to it on the judgment rendered the interest on $600.00 at 7 per cent. from December 20, 1927, to January 25, 1928, which amounts to $4.08.

It is therefore the judgment of this Court that unless the plaintiff remits upon the record, within ten days after the filing of the remittitur, the sum of $4.08, the judgment be reversed and a new trial granted; but that if she so remits the sum of $4.08, judgment is affirmed for $665.92.

MESSRS. JUSTICES BLEASE and CARTER, and MR. ACTING ASSOCIATE JUSTICE MENDEL L. SMITH concur.

MR. JUSTICE COTHRAN (dissenting) : There is no material dispute as to the facts in this case. Prior to September 14, 1927, the insured had been working as a doffer in the spinning room of the cotton mill. He and his wife were at that time occupying a house in the mill village. On September

14th, he secured his time from the mill office, was paid off; he had the outside check him out of his house which he vacated; he had his household goods loaded on a wagon and moved to the house of Mr. Hall, where they remained two months in storage under an arrangement with Mr. Hall; he and his wife then went to the home of his father in an adjoining county, where they remained for ten days; during that time the insured was not working in the mill; on his return to the mill he made arrangements to board with Hall where his household goods were stored and continued to board there for about two months; on October 4th, he went to the overseer of the spinning room and asked for a job; on October 6th he was put to work as spare help, not his regular job as doffer; later he moved into a house in the mill village, not the one vacated in September; report of his re-employment was not immediately made to the insurance company for the reason that he would not under the policy be again eligible for insurance until the expiration of three months' employment, though it was later.

Upon several occasions the insured had left the mill and each time pursued the same course of reporting his departures to the mill officials and upon his return securing a new certificate of employment. It seems to me that no other reasonable inference could have been drawn from this evidence than that the insured severed his employment with the mill on September 14th without any indication on his part of a desire to return and with no obligation to re-employ him in case of his return. When he did return in October and secured new and different employment, he became subject to the terms of the policy which made him ineligible for insurance until after the expiration of three months.

The employment of the insured, so far as the evidence shows, was for an indefinite time and may have been terminated at the will of either party. 39 C. J., 71. Like any other contract, it may have been terminated by agreement of the parties or by their consent, either express or implied.

39 C. J., 76. When the insured acted as he did and the mill canceled his employment and so notified the insurance company, the implication of mutual consent was as clear as it could possibly have been. During the interval of his absence, could any act of his have been charged to the employer?

In *Douglas v. Ins. Co.* (Mo. App.), 297 S. W., 87, it was held, quoting syllabus:

"Servant's connection with service ceases when he leaves; especially if he leaves of his own accord. * * * After a servant has left, the service, the only way in which he can return to it is by making a new contract with the employer, who can receive him back or not as he sees fit.

In the case at bar it seems that the servant did everything that he could have done to terminate the employment; under the circumstances there was absolutely no obligation on the part of the mill to give him re-employment upon his return, which seems to be conclusive of the issue whether his employment had ceased.

In *Knudsen v. Benn* (C. C.), 123 F., 636, 637, the Court said:

"When a servant leaves, * * * the connection of the servant with the service ceases, and this is especially so when the employee leaves of his own accord. He has the right to do so if he demands higher wages, and the demands are not complied with by the employer. He may leave, but if he does he has no right to insist upon re-employment, * * * he has no further interest in the service. * * * He has left the service, and the only way he can return to it is by making a new contract with the employer, who may receive him back or not, as he sees fit:"

The policy provided that "upon termination of active employment, the insurance of any discontinued employee under this policy automatically and immediately terminates

and the company shall be released from any further liability of any kind on account of such person."

If the insured made application for his time, received a check for it "ending September 12—17—27," presented it to the treasurer, received the money, gave notice of vacating the house he was living in, moved his household goods and stored them in another house, left the village with his wife and went into another county to the home of his father, I do not see what else he could have done to terminate his employment; all without any intimation of his intention to return.

The fact that he stored his goods while away may have indicated a purpose to return, of which the mill had no notice; but such uncommunicated intention not agreed to by the mill could not maintain the continuity of his employment. That he himself considered the employment terminated is shown by his application for and acceptance of employment of a different character and location in a different house.

The policy also provides:

"Re-employment will be classed as new employment in accordance with Paragraph 4 hereof, and will be subject to the issuance of a new certificate";

And:

"Each new employee of the employer shall be insured hereunder on the basis upon which the insurance on the employees was originally granted, such insurance to take effect as and from three months from the time such new employee enters the employment of the employer and begins work."

It appears also, in corroboration of the foregoing conclusion, that the name of the insured was taken off of the payrolls, the insurance company notified of his withdrawal, and a deduction made by the insurance company on account thereof; all in consequence of the conduct of the insured which should estop his beneficiary from claiming the insurance.

I think therefore that the defendant's motion for a directed verdict should have been granted.