**AMERICAN INSURANCE COMPANY,**
Appellant,

v.

**FIRST NATIONAL BANK IN
ST. LOUIS, Appellee.**

No. 19292.

United States Court of Appeals
Eighth Circuit.

April 17, 1969.

Herbert E. Barnard and James E. Mc-Daniel, of Barnard, Timm & McDaniel, St. Louis, Mo., for appellant.

William C. Connett, IV, of Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for appellee; Thomas C. Walsh, St. Louis, Mo., with him on brief.

Before VAN OOSTERHOUT, Chief Judge and MATTHES and BRIGHT, Circuit Judges.

VAN OOSTERHOUT, Chief Judge.

Defendant American Insurance Company has taken this timely appeal from a judgment against it in favor of plaintiff First National Bank in St. Louis for $797,507.60 and interest. Liability is predicated upon a Banker's Blanket Bond issued by defendant to plaintiff which it is admitted was in full force and effect at all times here material. This case was tried to Judge Meredith without a jury. Jurisdiction, based upon diversity of citizenship, is established. The parties agree that Missouri law controls.

Judge Meredith's well-considered opinion is reported at 280 F.Supp. 620. The basic facts are not in dispute and are fully and fairly set out in the opinion. The issues and the basis of decision are there clearly stated.

The controlling issue is whether the loss sustained by the plaintiff is covered by Clause (E) of the Banker's Blanket Bond Standard Form 24 issued by defendant to plaintiff. Clause (E) in pertinent part reads:

"Any loss through the Insured's having, in good faith and in the course of business, * * * given any value * * * on the faith of * * * any securities, documents or other written instruments which prove to have been counterfeited or forged as to the signature of any maker, drawer, issuer * * * or as to the signature of any person signing in any other capacity, * * *

"Mechanically reproduced facsimile signatures are treated the same as handwritten signatures." [1]

The background facts will be briefly summarized. In the fall of 1965 plaintiff entered into a participation agreement with the First National Bank of Gorham, Illinois, (Gorham) whereby Gorham would make loans to Southern Illinois Co-operative Coal Sales Company (Southern) secured by assignment of accounts receivable upon receipt of certain items and that upon the forwarding to the plaintiff of carbon copies or photocopies of these items, plaintiff would at its option decide whether it wished to participate in the loan. Participation generally was in the amount of 100% of the loan. The two items Gorham was required to provide which are here critical were photocopies of the invoices assigned as security and photocopies of shipper's memorandum, both of which gave evidence of the transaction support-

[1]. Clause (E) appears in full at p. 623 of 280 F.Supp.

ing the account receivable assigned. The item referred to by the parties and hereinafter by us as a shipper's memorandum is the third sheet of a bill of lading bearing a carbon copy signature of an official of the railroad receiving the shipment from Southern to a customer. It contains an acknowledgment that the described goods were received for shipment as directed. A full description of the shipper's memorandum appears at p. 624 of 280 F.Supp.

It was later discovered that the invoices submitted did not represent actual sales and that the shipper's memorandums were fictitious and that the purported railroad agent's signature on the shipper's memorandums was in fact forged by a Southern officer or representative. The loans made were uncollectible and the amount of loss was stipulated in the amount for which judgment was entered, subject to the defenses urged.

The District Court held that the losses were covered by Clause (E), basing coverage and liability upon loss arising from good faith reliance upon the forged shipper's memorandum.[2]

The basis upon which the trial court found liability on the part of the defendant insurer on its blanket bond is thus stated:

"The facts clearly indicate that plaintiff extended credit upon a written instrument (a photocopy of the third sheet of the bill of lading), which proved to have been forged as to the signature of the maker or issuer (the railroad agent). The fact that the document received by plaintiff was a photocopy of a carbon copy signature is immaterial to this determination. The third sheet of the bill of lading,

if genuine, proved to the plaintiff bank that the original bill of lading had been issued and that the railroad had received the coal and it was being shipped to the persons reflected in the original bill of lading and corresponded with the accounts receivable which were assigned." 280 F.Supp. 620, 624.

Such findings to the extent that they are fact findings are supported by substantial evidence.

Defendant bases its rights to a reversal upon the following points:

I. The shipper's memorandum relied upon by the trial court does not fall in the category of "securities, documents or other written instruments" within the meaning of such words as they appear in Clause (E).

II. In any event, a photocopy of the shipper's memorandum does not constitute a document or instrument upon which plaintiff is entitled to rely.

III. A loss sustained by reason of a participation loan is not covered by the bond since plaintiff did not give value on the faith of the original loan papers submitted to Gorham and it is not established that Gorham is an agent or joint venturer of plaintiff and receipt of papers by Gorham was not a receipt of papers by plaintiff.

IV. If there is coverage under the bond, the court erred in the allowance of interest.

For the reasons hereinafter stated, we reject defendant's contentions with respect to liability. The interest issue will be separately treated hereinafter.

### I.

Defendant's first contention is that the words "securities, documents or

---

**2.** Plaintiff had in the trial court asserted coverage additionally on the basis of the unsigned fraudulent invoices covering goods which had in fact never been sold or delivered. The court rejected such contention at pp. 625–626 of 280 F.Supp. following the majority rule set out in State Bank of Poplar Bluff v. Maryland Cas. Co., 8 Cir., 289 F.2d 544, that liability

on Clause (E) cannot be predicated on an instrument which did not bear a forged signature. While plaintiff in brief states it has not abandoned such issue, it is not here pressed and we find it unnecessary to reach such issue in light of our determination that liability predicated upon a forged shipper's memorandum is established.

other instruments" as such words are used in Clause (E) do not cover the shipper's memorandum. Relying heavily upon the title of Clause (E), "Securities", defendant urges that before a written document or instrument can fall within this clause it must be a security. Reliance is largely placed on a Massachusetts case, Rockland-Atlas Nat'l Bank v. Massachusetts Bonding & Ins. Co., 338 Mass. 730, 157 N.E.2d 239, wherein the court states, "The title 'Securities,' although not controlling against a plain textual showing to the contrary, suggests that clause (E) is dealing with 'securities and writings something like securities' and it speaks against an intention to encompass all writings or all formal writings." Neither this court nor the Supreme Court of Missouri is bound by the Massachusetts case. We find the reasoning upon which it is based unimpressive.

■■ Missouri courts have frequently stated that insurance contracts, like other contracts, are to be reasonably construed consonant with the apparent objective and intent of the parties. Where there is no ambiguity, there is no room for construction, and the unequivocal words must be given their plain and ordinary meaning. Cass Bank & Trust Co. v. National Indem. Co., 8 Cir., 326 F.2d 308, 310; Davis v. Liberty Mut. Ins. Co., 8 Cir., 308 F.2d 709, 711; Imperial Cas. & Indem. Co. v. Relder, 8 Cir., 308 F.2d 761, 764.

In McMichael v. American Ins. Co., 8 Cir., 351 F.2d 665, 669, we stated:

"Also bearing on the rules of construction by which insurance contracts must be measured in Missouri is the fact that 'courts do not necessarily accept the construction accorded to policy terms by astute insurance specialists or perspicacious counsel but rather are concerned with the meaning which the ordinary insured of average intelligence and common understanding reasonably would give to the words or language under consideration.' Ham-

montree [v. Central Mut. Ins. Co., Mo.App.], supra, 385 S.W.2d 661, 666–667; Cass Bank & Trust Co. v. National Ind. Co., supra."

■ Two or more words in a contract connected by the word "or" generally have a separate meaning and it is ordinarily not persuasive for the insurer to argue that "the draftsman put in words to mean nothing." United Pacific Ins. Co. v. Idaho First Nat'l Bank, 9 Cir., 378 F.2d 62, 69; Fidelity Trust Co. v. American Sur. Co. of New York, 3 Cir., 268 F.2d 805, 807.

■■ When the foregoing generally prevailing rules of construction are applied to the facts before us, the conclusion that the words "documents or other written instruments" extend coverage beyond securities is inescapable. To hold otherwise would in effect be holding that the words "documents and other written instruments" were placed in the Clause (E) for no purpose at all. Documents and other instruments are not defined in the contract and hence the words must be given their plain and ordinary meaning. The words are sufficiently broad to cover the shipper's memorandum. If contrary to what we have said, any ambiguity exists, support for the conclusion we reach is found in the well-established Missouri rule to the effect that where the meaning of a policy provision is doubtful and the language thereof is susceptible of different constructions, the courts must adopt the construction most favorable to the insured. Western Cas. & Sur. Co. v. Southwestern Bell Tel. Co., 8 Cir., 396 F.2d 351, 353; McMichael v. American Ins. Co., supra.

II.

■ We also agree with the court's determination that the fact that the plaintiff received and relied upon a photostatic copy of the shipper's memorandum is immaterial. It has been held that duplicate invoices fall within the securities, documents and other instruments clause. Fidelity Trust Co. v. American Sur. Co. of New York, 3 Cir.,

268 F.2d 805; Security Nat'l Bank of Durand v. Fidelity & Cas. Co. of New York, 7 Cir., 246 F.2d 582.

The Missouri Supreme Court has approved the receipt in evidence of photostatic copies to the extent that they are true reproductions of the original. State v. McDaniel, 392 S.W.2d 310, 315; State v. Anderson, 384 S.W.2d 591, 603.

The accuracy of the photographic reproductions of the shipper's memorandums is in no way contested or challenged. Clause (E) protects against loss *on the faith* of forged or counterfeited documents. The development of photo-copying devices and the use thereof has greatly increased in recent years. Prudent business men rely upon the accuracy of photostatic copies of originals obtained from a reliable source. Here they were provided by Gorham, a reliable source. Where it is shown beyond dispute at the trial that the photostatic copies relied upon are accurate reproductions, a sound basis exists for a determination that the loss resulted on the faith of the authenticity of the original of which a photostatic copy was provided.

### III.

The trial court determined that in view of its conclusion on the issues hereinabove discussed it was unnecessary to decide whether Gorham was an agent of or a joint venturer with plaintiff in obtaining the loans upon the ground that such determination was immaterial in light of the holding that plaintiff was entitled to rely upon the photostatic copies it received and examined. We agree.

The trial court in its opinion has demonstrated that on the basis of Missouri law the false signature on the shipper's memorandum constituted a forgery. There is ample evidence to support the court's determination that plaintiff's loss was sustained as a result of good faith reliance by it on the photostatic copy of the forged shipper's memorandum and that the loss suffered falls within the provisions of Clause (E) of defendant's bond. Defendants have like-

wise failed to establish that the court's decision was in any way induced by a misinterpretation or misapplication of Missouri law.

### IV.

Defendant's challenge to the propriety of the interest award remains for consideration. The court's reported opinion shows the $797,507.60 judgment awarded includes unpaid principal of $786,-365.82 and interest at 7% from June 1, 1966, to August 1, 1966, with provision for interest subsequent to August 1, 1966, at 6% per annum.

Defendant contends that the court erred in computing interest in the following particulars:

1. No interest should be allowed as the bond makes no provision for interest.

2. Interest can only run from the date defendant breached its obligation to pay under its bond.

3. The damages were unliquidated prior to judgment and hence no interest is allowable.

4. In any event, no rate of interest is provided in the bond and consequently under § 408.020 V.A.M.S. allowable interest cannot exceed 6% per annum.

5. Defendant is entitled to credit upon the principal of the judgment for $40,681.05 interest paid by Southern prior to the discovery of the forgeries.

The court did not discuss the basis for its allowance of interest in its memorandum opinion or in any ruling which has come to our attention.

The bond indemnified plaintiff from "any loss" sustained in connection with transactions covered by the bond. No specific provision is made for interest. In our view when the ordinary rules for construction of contracts are applied, the indemnity provisions of the bond are sufficiently broad to authorize payment of interest for loss of use of money. See Aetna Cas. & Sur. Co. v. National Bank of Tacoma, 9 Cir., 59 F. 2d 493, 495; Birken v. Tapper, 45 S.D. 600, 189 N.W. 698, 24 A.L.R. 832.

Banks are engaged in the business of loaning money for profit. Damage for loss of use of money as well as for loss of the principal flows from the forgery. Loss of use would appear to be within the contemplation of the parties to the bond.

 It is quite true that absent a contractual obligation express or implied to pay interest that interest does not accrue prior to a demand for payment. Where, as here, an indemnitor is allowed a period of sixty days to investigate the claim, interest would not start until the end of the sixty-day period. See Lemay Ferry Bank v. New Amsterdam Cas. Co., 347 Mo. 793, 149 S.W.2d 328, 330. However, such rule does not apply where a contractual obligation to pay interest exists.

 Plaintiff's claim here is not unliquidated as the amount due can be readily ascertained by computation. The parties in their pretrial stipulation incorporate information from which the amount due can be readily computed. The court was not compelled under the facts before it to deny interest upon the ground the claim was unliquidated. See Eastmount Constr. Co. v. Transport Mfg. & Equip. Co., 8 Cir., 301 F.2d 34, 42–43; 47 C.J.S. Interest § 19a and b.

 The bond does not fix the rate of interest to be paid for the loss of use of money. The interest rate fixed by the notes is not controlling as defendant has not guaranteed the payment of the notes. The indemnity is for loss resulting from the forgery. In the absence of a contractual provision with respect to the rate of interest, the amount of interest recoverable is limited to 6% per annum by § 408.020 V.A.M.S.

Based upon the contention that plaintiff's recovery is limited to the principal of the amounts loaned in reliance on the forged instrument, defendant contends it is entitled to credit on the principal of the claim for the interest payments made by Southern prior to the discovery of the forgeries. Such claim is wholly without merit. The interest payments made by Southern were on notes that they were legally obligated to pay. The interest paid by Southern was credited upon the notes in accordance with their direction.

By way of summary, we hold plaintiff is entitled to recover the unpaid principal of the loans made in reliance on the forged shipper's memorandums together with interest thereon at the rate of 6% from June 1, 1966. The court erred in computing interest at 7% instead of 6% for the period from June 1, 1966, to August 1, 1966. Such error resulted in over computation of interest in the amount of $1591.89.[3]

The judgment is modified to provide for a judgment of $795,915.71 (instead of $797,507.60 entered by the trial court) with interest thereon from August 1, 1966, at 6% per annum, and costs, and as so modified the judgment is affirmed.

Costs on appeal taxed to defendant.

---

3. The parties by Exhibit 9 to their stipulation agree that interest at 7% from June 1, 1966, to August 1, 1966, is $11,141.-78, and the interest computed at 6% for the same period is $9549.89.