**BALTIMORE BANK & TRUST COMPANY, Appellee,**

v.

**UNITED STATES FIDELITY & GUARANTY COMPANY, Appellant.**

**No. 20045.**

United States Court of Appeals,
Eighth Circuit.

Jan. 18, 1971.

---

5. The witness was thoroughly cross-examined on the balance of his testimony by the attorney for the co-defendants.

Samuel J. Molby, James F. Duncan, Kansas City, Mo., for appellant.

Henry G. Eager, John J. Kitchin, Kansas City, Mo., for appellee; Swanson, Midgley, Jones, Eager & Gangwere, Kansas City, Mo., of counsel.

Before MEHAFFY, LAY and BRIGHT, Circuit Judges.

MEHAFFY, Circuit Judge.

This appeal is from a judgment awarded plaintiff, Baltimore Bank & Trust Company, against its Bonding Company, United States Fidelity & Guaranty Company, under a bankers' blanket bond for a loss sustained by reason of its acceptance of a promissory note on a loan, it being later determined that the note was forged. We affirm.

This is a diversity case and the substantive law of Missouri is controlling.

The trial was to a jury and defendant's request for submission of special questions resulted in a special verdict, the jury finding that the Bank sustained a loss in the amount of $27,000.00 by accepting as collateral a so-called Logan note and a Latham note. The Logan note was in the principal amount of $10,000.00 and the Latham note was in the amount of $17,000.00. It was admitted that the Logan note was a forgery but the jury found that the Latham note was not a forgery although the evidence was controverted. As a result of the jury's conclusion, judgment was entered in favor of the Bank in the sum of $11,023.40, representing the principal and interest on the Logan note. Defendant filed a motion for judgment notwithstanding the verdict and plaintiff filed a motion for a "partial new trial" as to the transaction upon which it lost. The court denied both motions and only the defendant has appealed.

Clause (E) of the bond insures or indemnifies the Bank for the following:

"(E) Any loss through the insured's having, in good faith and in the course of business, whether for its own account or for the account of others, in any representative, fiduciary, agency or any other capacity, either gratuitously or otherwise, purchased or otherwise acquired, accepted or re-

ceived, or sold or delivered, or given any value, extended any credit or assumed any liability, on the faith of, or otherwise acted upon any securities, documents or other written instruments which prove to have been counterfeited or forged as to the signature of any maker, drawer, issuer. * * *"

E. C. Riley had been a customer of the Bank since 1964 and over a three-year period obtained and repaid several loans, one as large as $100,000.00 and another for $91,000.00. Between February 16, 1967 and March 16, 1967 Riley made deposits totalling $150,000.00 to his checking account and wrote checks for approximately the same amount. The Bank paid all of the checks which Riley wrote, but thirteen of those which he deposited, which had been endorsed to him by various payees, were later returned unpaid. As a result, Riley's checking account became overdrawn in the amount of $39,643.82. Being unable to make up this deficiency, Riley obtained two loans from the Bank to cover it. The first loan was obtained on March 24, 1967 in the amount of $31,302.45 evidenced by a thirty-day promissory note and collateralized by fifty shares of stock in South Range Motors, Inc. An additional loan was obtained by Riley from the Bank on April 7, 1967 in the amount of $8,341.37. This note was secured by a pledge of fifty shares of stock in E. C. Riley Implement Company.

The Bank was pressing Riley for payment of the loans but he was unable to do so, and on July 20, 1967 the Bank permitted him to replace or pay off the previous loans with two new notes using different collateral. One was a thirty-day note in the amount of $15,000.00 and the other was a three hundred sixty-day note in the amount of $24,500.00 secured by a pledge of the following items:

(1) A $15,000.00 promissory note payable to E. C. Riley dated July 14, 1967 and signed by American National Trust and Republic National Trust;

(2) A $10,000.00 promissory note of Joseph Logan payable to E. C. Riley and secured by a combine and a tractor;

(3) A $12,802.50 promissory note of Howard V. Reece payable to E. C. Riley and secured by four combines; and

(4) A $17,000.00 promissory note of John D. Latham payable to E. C. Riley and secured by four combines.

Upon making the new notes, the security for the two previous notes was returned to Riley.

Riley was unable to meet his obligation to pay the loan and the Bank sought collection from the makers of the notes which were pledged as security. It collected from Reece on his note but was unable to collect on the Logan, Latham or American National Trust and Republic National Trust notes. Both Logan and Latham contended that the notes purportedly made by them were forgeries, and the Bank filed its proof of loss with the Bonding Company, alleging that these two notes totalling $27,000.00 had been forged and that it was insured under the bankers' blanket bond. Defendant denied the claim.

Defendant's argument on appeal is that the Bank failed to prove the amount of the loss it sustained as a result of the "exchange of collateral" on July 20, 1967. The Bank asserts that there is abundant evidence that it sustained a loss "through having, in good faith, and in the course of business, acquired, accepted, received, extended credit or otherwise acted on the faith of * * *" the Logan note which was admittedly forged, all within the reasonably intended coverage of the bankers' blanket bond, and that in any event the matter of stock value should not be considered because on December 21, 1967 the Bonding Company declined the claim for an entirely different reason and thus waived the defense presently relied upon.

Defendant's contention that the Bank must establish a loss resulting from the "exchange of collateral" in order to recover is a novel one when applied to the transaction here. No cases are cited by either party dealing with this specific question and we have found none. Defendant contends that there was insufficient evidence as to the amount of the loss because there was no specific evidence as to value of the stock which was given as collateral for Riley's first two notes, and, consequently, since the value was not proven it was not established that there was a loss resulting from the return of the collateral and the acceptance of the Logan note which was later determined to be admittedly a forgery and worthless.

The Bank contends that the value of the stock given as security on the first two loans is immaterial. We agree. The effect of the transaction was to pay off the original notes by giving two new notes secured by different collateral. The transaction was in the nature of a novation and it was the substitution of a new legal obligation for an old one.

■■■■ Clause (E) of the bankers' blanket bond clearly insures against loss resulting from the acceptance in good faith of a forged note or other instrument given as security for an extension of credit. Where there is no ambiguity there is no room for construction, and the unequivocal words must be given their plain and ordinary meaning. American Ins. Co. v. First Nat'l Bank in St. Louis, 409 F.2d 1387, 1390 (8th Cir. 1969); Davis v. Liberty Mut. Ins. Co., 308 F.2d 709, 711 (8th Cir. 1962); Imperial Cas. & Indem. Co. v. Relder, 308 F.2d 761, 764 (8th Cir. 1962); State ex rel. Prudential Ins. Co. of America v. Bland, 185 S.W.2d 654, 656 (Mo.Sup.1945). Furthermore, as stated in McMichael v. American Ins. Co., 351 F.2d 665, 669 (8th Cir. 1965), the rule followed in Missouri is that courts do not necessarily accept the construction accorded to policy terms by "astute insurance specialists or perspicacious counsel" but rather the courts are concerned with the meaning which the ordinary insured of average intelligence and common understanding reasonably would give to the words or language under consideration. If the meaning of the policy provision is doubtful, however, and the language thereof is susceptible of different constructions, the rule is well established in Missouri that the courts must adopt the construction most favorable to the insured. American Ins. Co. v. First Nat'l Bank in St. Louis, *supra*; Western Cas. & Sur. Co. v. Southwestern Bell Tel. Co., 396 F.2d 351, 353 (8th Cir. 1968); McMichael v. American Ins. Co., *supra*; Cass Bank & Trust Co. v. Nat'l Indem. Co., 326 F.2d 308, 310 (8th Cir. 1964). In Missouri, insurance contracts are to be reasonably construed consonant with the apparent objective and intent of the parties. American Ins. Co. v. First Nat'l Bank in St. Louis, *supra*; Mid-Continent Stores, Inc. v. Central Sur. & Ins. Corp., 377 S.W.2d 567, 568 (Mo.App.1964). The term "blanket bond" in itself indicates wide coverage, and the contract is to be interpreted in this fashion. Fidelity Trust Co. v. American Sur. Co. of New York, 268 F.2d 805, 807 (3rd Cir. 1959).

■■■■ The Bank extended credit to Riley on July 20, 1967 when it permitted him to give new notes and security for his previous notes and security. The old debt was extinguished at that time and a new one made. Even if it be considered a "pre-existing debt," the Bank's acceptance of the Logan note as security was a transaction for value within the meaning of V.A.M.S. § 400.3–303, which provides:

"A holder takes the instrument for value * * *

"(b) when he takes the instrument in payment of or as security for an antecedent claim against any person whether or not the claim is due * * *."

The president of the Bank testified that at the date of trial Riley's unpaid indebtedness totalled $31,218.68. The jury found that the Bank had suffered a

loss of at least $27,000.00, and therefore its loss was well in excess of the face value of the Logan note, plus interest. Under Clause (E) of the bond the Bonding Company agreed to hold the Bank harmless from any losses sustained through its having in good faith in the course of business extended any credit on the faith of any securities or other written instruments which prove to have been forged as to the signature of any maker. The situation presented here is just such a situation insured against. We think there is ample evidence to support the verdict and judgment for the face amount of the Logan note plus interest and costs.

The Bank also urges that the judgment should be affirmed for the additional reason that the Bonding Company did not assert at the time it declined the claim that the collateral securing the two previous notes was of no value, as it now contends, and consequently waived such "defense," citing Delmar Bank of University City v. Fidelity & Dep. Co. of Md., 428 F.2d 32 (8th Cir. 1970), and a number of Missouri cases. In view of our conclusion as set out above, we find it unnecessary to pass on the Bank's second ground for affirmance.

The judgment of the district court is affirmed.