M. B. A. F. B. FEDERAL CREDIT UNION, Plaintiff,

v.

CUMIS INSURANCE SOCIETY, INC., Defendant and Third Party Plaintiff,

v.

Jack G. MONTGOMERY, Helen R. Montgomery, Mary L. Morris and Mary F. Smith, Third Party Defendants.

Civ. A. No. 77–2087–8.

United States District Court,
D. South Carolina,
Florence Division.

Feb. 10, 1981.

Jack T. Flom, Myrtle Beach, S. C., for plaintiff.

Robert J. Thomas, Columbia, S. C., for defendant and third party plaintiff.

E. N. Zeigler, Florence, S. C., for third party defendants.

BLATT, District Judge.

Cumis Insurance Society, Inc., insured the plaintiff under a credit union fidelity bond "[F]or direct loss of, or damage to, any property, as defined herein, caused by the fraud or dishonesty of any of the insured's employees ... *or* through the failure on the part of such employees ... to well and faithfully perform his [sic] duties." (emphasis added). Property is defined in the bond to include "Money ... in which the insured has a pecuniary interest or which are [sic] held by the insured in any capacity...." Further, under the terms of the bond, the insured was required to give the insurer written notice of any loss claimed under the bond as soon as possible and to file a proof of claim with the insured within ninety (90) days of the giving of such notice, and the insurer was then given thirty (30) days, after proof of claim had been filed, to investigate the loss.

The insured instituted this action against the insurer on October 20, 1977, contending that it had sustained a loss covered under the terms of the aforementioned bond due to the failure of four of its employees to well and faithfully perform their duties. The insurer, Cumis, was allowed to bring into the suit as third party defendants the four employees of the plaintiff whose conduct the plaintiff contended was the direct cause of the loss.

In the complaint in this action, the insured alleged that in 1973 the four employees had each participated in handling a loan in the amount of $225,000.00 made to one John Stowe, which was secured by a real estate mortgage. The note, executed by Stowe, called for interest at the rate of 12 per cent per annum and, although it appears that no payment was ever made on the principal indebtedness, Stowe maintained the interest payments due on the loan until August, 1974. After Stowe defaulted in the interest payments, while the plaintiff was in the process of foreclosing on the real estate, it discovered that Stowe had purchased the property for $72,000.00 at the same time he secured the loan of $225,000.00 with this property. Although

at the foreclosure sale, with an uncontested bid, the property was purchased by the plaintiff for $90,000.00, the plaintiff could sell the property for only $64,000.00, and the resultant loss which the plaintiff incurred constitutes the basis of this litigation. The plaintiff contends that it suffered the aforesaid loss as a direct result of the failure of the four third-party defendants to well and faithfully perform their duties when acting for the plaintiff. This issue of whether the plaintiff had suffered such loss as a direct result of the conduct of the defendants Jack G. Montgomery, Helen R. Montgomery, and Mary L. Morris was submitted to the jury, a verdict having been directed in favor of the other defendant, Mary F. Smith. The jury determined, based solely on the conduct of the defendant Jack G. Montgomery, that the plaintiff was entitled to a verdict against the defendant. Prior to the trial of the case, the parties had agreed that, if the liability issue was decided favorably to the plaintiff, the remaining issues going to damages would be later heard and determined by the court without a jury, and counsel for the parties agreed that, with a minor exception hereinafter set forth, any judgment recovered against the defendant would constitute the basis for the same judgment in favor of the defendant and third-party plaintiff against any third-party defendant whose conduct the jury determined had caused the plaintiff's loss.

At the trial of the case, the court held that the terms of the bond whereby the plaintiff's employees were covered for their failure "to well and faithfully perform their duties" required these employees to perform their duties with reasonable skill and diligence, and the court further held that the defendant would be responsible to the plaintiff if any of these employees were negligent in the performance of their duties and such negligent conduct was a proximate cause of any loss to the plaintiff. Since the court adopted this negligence standard to measure the conduct of the employees, the plaintiff did not attempt to recover under the fraud or dishonesty provisions of the bond, for these provisions admittedly would have required a higher degree of proof than that necessary to prove mere negligence. The defendant had contended that the words "to well and faithfully perform their duties" applied only to an employee's honesty and were not sufficiently broad to cover negligent conduct.

■ The determination by the court at trial that the words "well and faithfully perform their duties" encompassed negligent conduct was based on a reasonable reading of these words in the bond when considered with the alternative provision providing coverage for "fraud or dishonesty" in another part of the same insuring clause. The court held that there would be no meaning to, or basis for, the clause "well and faithfully perform" in the bond if such clause did not cover conduct different from "fraud or dishonesty" on the part of an employee. Furthermore, the court followed what it believed to be the great weight of authority in such interpretation of this bond language, there being no South Carolina case law involving an identical or similar bond provision. 13 Couch on Insurance § 46:51 (2d ed. 1963); *Minor v. Mechanics Bank*, 26 U.S. (1 Pet) 46, 68, 7 L.Ed. 47 (1828); Annot., 62 A.L.R. 411, 412 (1929); Annot., 43 A.L.R. 977, 979 (1926).

At a later hearing in this case by the court to establish the damages owed to the plaintiff by the defendant Cumis, the court found as a fact, for the reasons orally set forth at the hearing, that an endorsement to the bond, which allegedly would have eliminated interest as an element of damages, was never sent to the plaintiff and was not a part of the bond provided by the defendant Cumis, and the court further determined that a reasonable attorney's fee to be awarded to the plaintiff's attorney for foreclosing the mortgage on the property covered in the loan to Stowe, admittedly within the coverage of the bond, would be $6,400.00. The defendant Cumis had admitted during the jury trial of the case that $64,000.00 was a reasonable price for the property involved in the foreclosure sale, which amount should be credited to that defendant, and the defendant Cumis admit-

ted during the non-jury trial that foreclosure expenses totaling $1,365.00 were also reasonable, and, like the attorney's fee, covered by the bond issued by that defendant.

In determining the total amount of damages for which the defendant is liable, the defendant Cumis contended that the court should credit on its indebtedness any interest paid by the borrower, Stowe, and this defendant further contended that, under the terms of its bond, it did not owe any interest on the loss claimed by the plaintiff. Additionally, this defendant urged that if it did owe interest, such interest would only run from the date of judgment at the statutory rate, because this suit involved an unliquidated claim. The plaintiff, on the other hand, contended that the defendant Cumis could be given no credit for the interest paid by Stowe, and that it was entitled to interest on the loss either from the date of the default of an employee causing loss, or from the final date of the thirty-day investigative period, namely November 19, 1976, which period had commenced to run at the time the insured had filed proof of claim with the insurer.

■ Turning first to the question of whether prejudgment interest may be awarded under the terms of the fidelity bond here involved, the court recognizes the age-old maxim that the terms and meanings of an insurance contract, if capable of two or more reasonable interpretations, must be construed more strongly against the insurer and in favor of the insured. *Seaboard Fire & Marine Insurance Company v. Gibbs*, 392 F.2d 793, 794 (4th Cir. 1968); *Gaskins v. Blue Cross-Blue Shield of S. C.*, 271 S.C. 101, 245 S.E.2d 598, 600 (1978). It seems evident, since the insurer claimed that it had forwarded an endorsement to the insured for attachment to the insured's policy, which endorsement would have expressly excluded, as an element of loss under the policy, any claimed "loss of earnings on property"—(meaning loss of earnings on money here)—that even the insurer recognized that, without such exclusion being made a part of the policy, a "loss of earnings" on money, more commonly de-

nominated interest, would be recoverable under the policy as originally issued to the plaintiff. Since the court has determined that the aforementioned endorsement was never made a part of the plaintiff's policy, the court has concluded that the defendant's policy does cover interest on the plaintiff's loss, as certainly the policy, when construed as a whole, does provide a reasonable inference that loss of interest income would be a "direct loss" incurred by the plaintiff due to the failure of the defendant, Montgomery, "to well and faithfully perform" the duties of his office. Furthermore, the law of South Carolina, as approved and elucidated in the opinions of the Fourth Circuit Court of Appeals, clearly, in this court's opinion, allows an insured to recover interest in claims for loss of property, especially where such losses are covered in insurance contracts, even though such a claim may be unliquidated. The right of a court to exercise its discretion and award interest as an element of damage, where the same is not expressly excluded by contract, has been recognized, even though the claim is unliquidated, by the South Carolina Supreme Court in *Knight v. Sullivan Power Co.*, 140 S.C. 296, 302, 138 S.E. 818, 820 (1927), and *Cogsdill v. Metropolitan Life Insurance Co.*, 158 S.C. 371, 375, 155 S.E. 747, 748 (1930), by the Fourth Circuit Court of Appeals in *E. I. duPont deNemours Co. v. Lyles & Lang Construction Co.*, 219 F.2d 328, 341 (4th Cir. 1955), and *Montgomery Ward & Co. v. Collins Estate, Inc.*, 268 F.2d 830, 838 (4th Cir. 1959), both cases arising in South Carolina, and in a well-reasoned opinion written by the distinguished former Chief Judge of the District of South Carolina, the Honorable Robert W. Hemphill, in *Johnson v. Aetna Insurance Co.*, 308 F.Supp. 33, 35 (D.S.C.1970). Only by allowing interest in a case involving loss of, or damage to, property, unless such allowance is expressly excluded, can the damaged party be restored to the position which it would have occupied if the party in default had fulfilled its duty in the premises. A party who fails to perform a duty in these circumstances is justly bound to make good all damages that accrue naturally from a

breach, and a party who has had the use of money owed to another may justly be required to pay interest from the time the payment should have originally been made. The opinion by the late Judge Parker of this Circuit in the case of *Chesapeake and Ohio Railway Co. v. Elk Refining Co.*, 186 F.2d 30, 33 (4th Cir. 1950), later cited with approval in *Robert C. Herd & Co. v. Craywill Machinery Corp.*, 256 F.2d 946, 953 (4th Cir. 1958), sets forth with clarity the justification for allowing interest for loss of property under circumstances applicable to the instant case. Following this theory, and under a fidelity bond similar to the one here involved, which did not specifically exclude interest as an element of damage, the Eighth Circuit Court of Appeals in *American Insurance Co. v. First National Bank in St. Louis*, 409 F.2d 1387, 1391 (8th Cir. 1969), ordered that interest be recovered by the plaintiff on the principal amount of the loss. Other authorities supporting the inclusion of interest under like circumstances include *U. S. Fidelity & Guaranty Co. v. Empire State Bank*, 448 F.2d 360, 368 (8th Cir. 1971); *Clarke Baridon, Inc. v. Merritt-Chapman and Scott Corp.*, 311 F.2d 389, 399 (4th Cir. 1962); *Employer-Teamsters, etc. v. Weatherall Concrete, Inc.*, 468 F.Supp. 1167, 1171 (S.D.W.Va.1979); *Clarendon Bank & Trust Co. v. Fidelity & Deposit Co. of Maryland*, 406 F.Supp 1161, 1173 (E.D.Va.1975). *See also* 74 Am.Jur.2d *Suretyship* § 166 at 116 (1974); 35 Am.Jur.2d *Fidelity Bonds and Insurance* § 76 at 558 (1967); Annot., 36 A.L.R.2d 337, 473 (1954).

■ Having determined that the plaintiff is entitled to recover interest, two issues involving this interest remain to be decided, namely, the date the interest should begin to run on the amount of the plaintiff's loss, and the rate of such interest. As to the date of the commencement of the interest, it seems to this court, under the express provisions of the policy, that no interest could be charged until thirty (30) days after the filing of a proof of claim with the insurer, since the policy terms specifically provided that the insurer should have thirty (30) days to investigate a loss. The parties admit that proof of claim was filed with the insurer on October 19, 1976, and that the thirty-day investigative period ended on November 18, 1976; thus, the court finds that the plaintiff is entitled to interest on the total amount of its loss, reduced by any credits thereon, from November 19, 1976. Allowance of interest in instances where such an investigative or moratorium period is provided in a bond or contract from the termination of that period seems to be generally recognized as the appropriate legal principle. *E. g., American Insurance Co. v. First National Bank*, 409 F.2d at 1392; *Clarendon Bank & Trust v. Fidelity and Deposit Co. of Maryland*, 406 F.Supp. at 1174; 15 Couch on Insurance § 5758 at 759 (2d ed. 1963); 35 Am.Jur.2d *Fidelity Bonds and Insurance* § 76 at 556 n. 11 (1967); Annot., 57 A.L.R.2d 1317, 1325 (1958).

The other question involving interest, namely, the rate where none is specifically provided by contract, has invoked a diversity of opinion. Some courts follow the rule that interest at the legal rate provided by statute should be allowed. *American Insurance Co. v. First National Bank*, 409 F.2d at 1392; *Hack v. American Surety Co. of New York*, 96 F.2d 937, 947 (7th Cir. 1938); *Clarendon Bank & Trust v. Fidelity and Deposit Co. of Maryland*, 406 F.Supp. at 1174. Other courts, particularly the South Carolina courts and those in the Fourth Circuit, have held that the rate of interest, whether recoverable specifically as interest, or included as an element of general damages, should not be determined according to any specific statutory rate, but should be reasonable in amount as the circumstances of the case warrant. In *Knight v. Sullivan Power Co.*, 149 S.C. at 304, 138 S.E. at 820, the Supreme Court of South Carolina approved a charge in which the trial judge directed that, in assessing damages, the jury—(here, the court)—in their discretion, could take into consideration and add to the general verdict, as a part thereof, such interest as the jury felt appropriate under the circumstances there. That opinion does not indicate the exact method which should be used to determine a reasonable rate or

amount of interest. However, in *Montgomery Ward & Co. v. Collins Estate*, 268 F.2d at 830, and *E. I. duPont deNemours Co. v. Lyles & Lang Construction Co.*, 219 F.2d at 342, the Fourth Circuit Court of Appeals held that the interest should be determined, not according to the legal rate provided by statute, but at a rate that would compensate the plaintiff for the delay in recovering damages, when consideration is given to the state of the money market during the years for which interest is to be allowed. Other cases decided by the Fourth Circuit Court of Appeals approving this method of arriving at the rate or amount of interest are *Clarke Baridon, Inc. v. Merritt-Chapman and Scott Corp.*, 311 F.2d at 399, and *Chesapeake & Ohio Railway Co. v. Elk Refining Co.*, 186 F.2d at 35.

■ A review of the testimony indicates that at the time of the trial the plaintiff was being paid interest at the rate of 6 per cent on its invested surplus funds—(Tr. 290, 333)—and it was charging interest at the rate of 12 per cent on its large loans. In South Carolina, certainly during the period involved here, interest rates have seldom been below 10 per cent, and the court finds that the plaintiff will be fully and adequately compensated if it is paid 10 per cent interest on the amount of the outstanding balance of the loan made to Stowe, said interest to commence on November 19, 1976, the date of the end of the investigative period allowed the insurer under its policy terms.

■ It would be unjust and inequitable, in this court's opinion, to allow the defendant Cumis to claim credit for the interest paid by the borrower Stowe from the date of the loan—June 29, 1973 until August, 1974, when Stowe last made any interest payment on his loan. Certainly, the court, in view of the investigative clause in the insurer's policy, should not require this de-

fendant to pay to the plaintiff interest from the date of the last interest payment made by Stowe in August, 1974, until the end of the aforesaid investigative period—almost two (2) years later—during which time the plaintiff received no interest on the outstanding balance of the loan, and it seems equally inappropriate for the plaintiff to be required to give the defendant Cumis any credit for interest paid by Stowe on the loan between June, 1973, and August, 1974. The interest payments made by Stowe were payments on a loan for which he was legally obligated and these payments were credited on his account. The court also feels that it is reasonable to conclude that the foreclosure proceedings would have started earlier, and resultant claim for loss made sooner, had these interest payments by Stowe not been credited to his account, and the defendant would thus have owed interest from an earlier date than the date from which interest is being allowed by this court. A similar claim for credit for interest paid on an account by a borrower, when a loss thereafter occurred on a fidelity bond, was made by an insurer, and denied by the court, in *American Insurance Co. v. First National Bank*, 409 F.2d at 1392. Based on the foregoing, it is

ORDERED, that the plaintiff, M. B. A. F. B. Federal Credit Union, have judgment against the defendant, Cumis Insurance Society, Inc., in the amount of Two Hundred Forty-two Thousand Eighty and 75/100 Dollars ($242,080.75),[1] plus the costs of this action, with interest at the legal rate from the date of this order.

IT IS FURTHER ORDERED, that the defendant, Cumis Insurance Society, Inc. have judgment against the third-party defendant, Jack G. Montgomery, in the amount of Two Hundred Six Thousand One

---

1. Computed as follows:

| | | |
|---|---|---|
| (a) Amount of loss | – | $225,000.00 |
| (b) Less net sale credit ($64,000.00 minus $6,400.00 attorney's fee and $1,365.00 foreclosure expenses) | – | $56,235.00 |
| (c) Net amount of loss after sale | – | $168,765.00 |
| (d) Interest on $225,000.00 at 10 per cent from 11/19/76 to 3/27/77 | – | $7,890.41 |
| (e) Interest on $168,765.00 at 10 per cent from 3/27/77 to 2/9/81 | – | $65,425.34 |
| (f) Amount of judgment | – | $242,080.75 |

and 29/100 Dollars ($206,001.29),[2] plus the costs of this action, with interest at the legal rate from the date of this order.

AND IT IS SO ORDERED.

2. Computed as follows:

| | |
|---|---|
| (a) Amount of loss | – $225,000.00 |
| (b) Less net sale credit ($90,000.00[3] minus $6,400.00 attorney's fee and $1,365.00 foreclosure expenses) | – $82,235.00 |
| (c) Net amount of loss after sale | – $142,765.00 |
| (d) Interest on $225,000.00 at 10 per cent from 11/19/76 to 3/27/77 | – $7,890.41 |
| (e) Interest on $142,765.00 at 10 per cent from 3/27/77 to 2/9/81 | – $55,345.88 |
| (f) Amount of judgment | – $206,001.29 |

3 Ordinarily, the defendant, Cumis Insurance Society, Inc., would have been entitled to judgment over against the third-party defendant, Jack G. Montgomery, in the same amount of the judgment secured by the plaintiff. However, as stated in the body of this order, at the trial of the case, these parties agreed, rather than contest the reasonableness of the selling price of the property covered by the Stowe mortgage, that the third-party defendant, Jack G. Montgomery, would be credited with $90,000.00 from the sale of the mortgaged property, thus requiring the judgment in favor of Cumis Insurance Society, Inc. against Jack G. Montgomery to be computed in a different amount.