HANOVER BUILDING MATERIALS,
INC., Plaintiff-Appellee,
Cross-Appellant,

v.

Louis O. GUIFFRIDA, Director, Federal
Management Agency, Defendant-Appel-
lant, Cross-Appellee.

No. 83–1471.

United States Court of Appeals,
Fifth Circuit.

Dec. 17, 1984.

William Kanter, Atty. Appellate Staff,
Christine R. Whittaker, Atty., Civil Div.,
Dept. of Justice, Washington, D.C., for de-
fendant-appellant, cross-appellee.

Rinehart & Nugent, Jerry Nugent, Ste-
ven E. Hein, Austin, Tex., for plaintiff-ap-
pellee, cross-appellant.

Before GARZA, RANDALL, and TATE,
Circuit Judges.

TATE, Circuit Judge:

The plaintiff, Hanover Building Materi-
als, Inc. ("Hanover"), obtained government-
sponsored flood insurance upon its building
and contents pursuant to the National
Flood Insurance Act, 42 U.S.C. §§ 4001 *et
seq.* As is authorized by that statute, Han-
over sues the Federal Emergency Manage-

ment Agency ("the Agency") through its director, 42 U.S.C. § 4053, *see also* 28 U.S.C. § 1331, for the latter's disallowance of its claim for the contents of its roofed and two-walled structure. The policy provided that the contents of the building were covered only if the building was "enclosed." The district court granted Hanover judgment and also awarded it attorney's fees against the government. The government appeals the latter award, while Hanover cross-appeals to re-urge its contention that the loss was covered under the terms of the policy.[1]

The determinative issue of this appeal as to the government's liability on its flood insurance policy, as we view it, is whether the applicable policy provision (that a contents loss be covered only if the building be "enclosed") unambiguously excluded from coverage the contents of Hanover's two-walled building. Finding the "enclosed" provision ambiguous, and applying principles that ambiguities are construed against the insurer, we affirm (for different reasons, *see* note 1, *supra,*) the award to Hanover of some fifty-eight thousand dollars contents damage. However, we reverse the award of attorney's fees against the government, finding that the government was substantially justified in defending this suit.

## I.

Before adverting to the facts of this litigation, we set forth the administrative context of the coverage of flood insurance policies issued under this government-sponsored insuring program.

The National Flood Insurance Act of 1968 established a national flood insurance program that enables property owners to purchase insurance against flood risks at reasonable rates. Administration of the program is now entrusted to the Federal Emergency Management Agency. 42 U.S.C. § 4011(a). The Act authorizes the Director of the Agency to "provide by regulation for general terms and conditions of insurability which shall be applicable to property owners eligible for flood insurance coverage under [the Act]." 42 U.S.C. § 4013(a).

Pursuant to this authority, the Director has issued regulations pertaining to rates and coverage, 44 C.F.R. §§ 59.1 and 61.1 *et seq.*, and which also provide a standard flood insurance policy for dwellings (44 C.F.R., Part 61, Appendix A(1)), and for "general property" (44 C.F.R., Part 61, Appendix A(2)). The policies provide separately for coverage of the dwellings/buildings and of their contents. Hanover was issued a general property form of the standard flood insurance in effect prior to revision in 1982. 44 C.F.R., Part 61, Appendix A(2) (1981).

By the general definitions applicable to both forms of the standard policy, a building or structure was defined as "a walled and roofed building", 44 C.F.R. § 59.1 (*see* "Building" and "Structure"), and "contents coverage" was defined to include "personal property within an *enclosed* structure", *Id.* (emphasis added). Clause B ("Contents") of both Dwelling Form and General Property Form of the standard policy provided for coverage of contents within the "enclosed structure" or "within the described enclosed building", respectively. Nowhere in the regulations or in the Standard Policy, or in the Act itself, was the word "enclosed" defined, however, nor was the extent a structure must be "walled" to be enclosed, nor was the purpose for such limitation on coverage of contents expressed or implied—a hiatus, we might add, at least partially cured by the 1982 amendment of the regulations, *see* notes 3 and 4 and text *infra.* As will be seen, the Agency itself during the period preceding the

---

**1.** The district court had held that the loss was not covered by the contract, since the building was not "enclosed", but that the government was estopped to deny coverage because of its payment of similar claims on two occasions in the past and because the government's insurers had accepted premiums to cover the building for seven past year's renewals of the flood insurance policy. Since (unlike the district court) we find coverage due to the policy ambiguity, we do not reach the estoppel issue.

1982 revision did not interpret and apply these requirements literally so as to exclude coverage of buildings or their contents unless the structure was totally walled without aperture on all four sides.

## II.

The general principles applicable to judicial interpretation of flood-insurance policy provisions have been established by prior decision. Federal law governs disputes over coverage arising under the National Flood Insurance Act of 1968. *West v. Harris*, 573 F.2d 873, 880–81 (5th Cir. 1978), *cert. denied*, 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979). When such disputes arise, they are resolved under federal law "by drawing upon standard insurance law principles." *Id.* at 881; *see also Drewett v. Aetna Casualty & Surety Company*, 539 F.2d 496, 498 (5th Cir.1976). A number of such principles are relevant here:

The first is that, "if the language of a policy is clear and unambiguous, it should be accorded its natural meaning." *Landress Auto Wrecking Company, Inc. v. United States Fidelity & Guaranty Company*, 696 F.2d 1290, 1292 (5th Cir.1983). The second is that, "if the meaning of a policy provision is doubtful and the language used is susceptible of different constructions, the one most favorable to the insured is adopted." *Eagle Leasing Corporation v. Hartford Fire Ins. Co.*, 540 F.2d 1257, 1261 (5th Cir.1976). The third is that the rule favoring the insured where ambiguity exists "should not be applied automatically: '[I]nsurance contracts are to be reasonably construed consonant with the apparent objective and intent of the parties.' " *Id.* at 1262, *quoting Baltimore Bank & Trust Company v. United States Fidelity & Guaranty Company*, 436 F.2d 743, 746 (8th Cir.1971). The fourth principle is that, "[i]n deciding what a reasonable construction of the contested provisions is, the material we may draw from consists of those provisions, the policy as a whole, and the apparent objectives of the parties in establishing this kind of contractual relationship." *Eagle Leasing, supra*, 540 F.2d at 1262. The final principle relevant here is that, "[i]f the meaning of the policy terms remains [in the end] unclear, the policy is generally construed in favor of the insured in order to promote the policy's objective of providing coverage." *Eagle-Pitcher Industries, Inc. v. Liberty Mutual Insurance Company*, 682 F.2d 12, 17 (1st Cir.1982).

With these principles in mind, we now turn to Hanover's insured building and the coverage or not of its contents by the 1981 flood insurance policy.

## III.

Hanover sells lumber and building materials in Austin, Texas, in an area subject to periodic flooding. From 1975 until 1982, Hanover had in effect a flood insurance policy covering its Building No. 3 and its contents. Two prior claims, in 1975 and 1979, for flood damage to the building and contents were paid without cavil. However, when the building was again flooded in May 1981, the Agency (while paying for flood damage to the building itself) refused to pay for the damages to the contents of the building because it was not "enclosed." [2] The undisputed evidence is that the H-shaped building was roofed and had

---

**2.** The letter to Hanover denying coverage contains the somewhat cryptic explanation:

> After close consideration of the facts surrounding your recent loss, we regretfully cannot extend coverage.
>
> This [i.e., Building No. 3] is 12-sided pole-support structure which is enclosed on two sides. This structure is obviously not fully enclosed but it is enclosed as enclosed could be given the intended use of the building. The "open bin" has apparently been used successfully for storage by the lumber industry.

> FIA is in the process of making a decision on whether or not coverage is to be provided, until that decision is made we must resist payment at this time.
>
> Please find enclosed your Proof of Loss in the amount of $70,169.73. It stands rejected for the reasons stated above.

(Letter from L. Gough, Claims Examiner, and Philip Seisman, Unit Supervisor for the Agency, dated September 1, 1981. Exhibit P–13.)

walls on two sides covering slightly less than twenty-five percent of its sides.

██ We are unable to agree with the district court's holding that the word "enclosed" in Hanover's 1981 policy is unambiguous, that the word "has the plain ordinary meaning of being totally surrounded, encased or walled." Indeed, in the administration of this policy limitation, as the government's claims examiners indicated in their correspondence with their superiors and with Hanover of July 20 and September 1, 1981, P–12 and P–13, that an administrative standard of affording coverage or not was whether a building was "enclosed as enclosed could be, given the intended use of the building", even though the structure was not "fully enclosed." The government agents there admitted that Hanover's building fell within this standard, but, in denying coverage, they also informed Hanover that the Agency was in the process of determining whether coverage should be afforded (itself an indicia of the provision's ambiguous application), P–13, with the inter-agency correspondence noting that "[t]he decision made on whether or not coverage is to be provided impacts the entire lumber industry," possibly implicating the necessity for higher premiums. P–12. Hanover points out that, functionally, a lumber retailer cannot efficiently store and retail lumber without open bin access to the stored lumber, a position implicitly recognized by the Agency correspondence.

Thus the Agency itself recognized that, in the ordinary everyday meaning of language, a "walled" building is not necessarily required to be totally "enclosed" on all four sides. How much the building needs to be "walled" to be itself insured—and the Agency concedes that the building itself was sufficiently so walled—, and how much of it needed to be walled for it to be con-

sidered "enclosed", is not addressed in the 1981 regulations and standard forms; nor do they provide any indication that a building sufficiently walled to be insured is nevertheless not sufficiently enclosed so that its contents are insured, nor any functional reason why insureability should extend in one case and not in the other. (These ambiguous hiatuses have been at least partially clarified by the 1982 revisions of the standard forms, *see* notes 3 and 4 *infra.*)

In our view, the word "enclosed" is "susceptible of different constructions." *Eagle Leasing, supra,* 540 F.2d at 1261. Certainly, a building with a roof and walls on all sides and with no openings would be enclosed. Certainly, too, a building with no roof and no walls would not be enclosed. Just how much of a roof and how many walls are needed, however, is unclear. We cannot say, by referring solely to the policy term "enclosed," whether a partially enclosed storage building, not subject to further walling without destroying its functional purpose, is sufficiently or not "enclosed" so that damage to its contents is within the policy's coverage. Thus, we conclude that the policy term "enclosed" is ambiguous.

Construing the Hanover policy in its entirety does not remove the ambiguity. The regulations in effect when the policy was issued define "building" as a "structure" and define "structure" as a "walled and roofed building." 44 C.F.R. § 59.1 (1981). The phrase "walled and roofed building" is not defined, however. Moreover, no other provisions in either the regulations or the policy indicate how the phrase should be defined.[3] Hence, that phrase itself was ambiguous and sheds no light on the meaning of the word "enclosed."[4]

In sum, we conclude that the meaning of the word "enclosed" as a limitation on the

---

**3.** This problem has since been corrected. The 1982 revision of the standard general property policy the Agency currently uses for buildings like Hanover's Building No. 3 defines the phrase "walled and roofed building" as a "building [that] has in place two or more exterior, rigid walls and the roof is fully secured so that the building will resist flotation, collapse and lateral movement." 44 C.F.R. Part 61, Appendix A(2),

"Definitions" (1983). *See also,* for similar 1982 definition in the Dwelling Form, *Id.,* Appendix A(1), Article II ("Definitions").

**4.** We note, though, that the Agency currently uses a 1982 revision of the standard policy for dwellings that contains a provision for contents coverage that, had it been included in Hanover's

coverage of the contents of a building, itself sufficiently "walled" to be insured, did not unambiguously exclude these contents from coverage under the policy. The policy terms as a whole and the evidence reflect no reason why Hanover should reasonably have expected that its building was not sufficiently "enclosed" within the meaning of the policy to afford flood-damage protection to the contents of the insured building as well as to the walled building itself. This ambiguity in the policy provisions must be resolved in favor of coverage of the insured Hanover's loss. *Eagle-Pitcher, supra,* 728 F.2d at 17. We further note that, as the 1982 revisions of the standard forms indicate, *see* notes 3 and 4 *supra,* the ambiguities of the policy could rather easily have been cured by more explicit language.

Accordingly, we affirm (for a different reason, *see* note 1, *supra,*) the judgment of the district court awarding Hanover the amount of its loss through flood-damage to the buildings contents.

### IV.

■ The Equal Access to Justice Act governing the award of attorney's fees against the United States prohibits us from making such an award if we find that the Agency's position was "substantially justified." 28 U.S.C. § 2412(d)(1)(A). We have no trouble in so finding here. The government is "substantially justified", within the meaning of the statute, when the government shows that it " 'had a reasonable basis both in law and fact' " for its position, *S & H Riggers & Erectors, Inc. v. Occupational Safety & Health Review Commission,* 672 F.2d 426, 430 (5th Cir.1982), which requisite showing is here met.

■ Hanover also contends that, at any rate, it is entitled to recover attorney's fees

policy, would most likely have eliminated the ambiguity. The relevant provision reads:
> However, personal property located in buildings having in place two or more rigid walls and a fully secured roof are covered if the contents are secured to prevent flotation out of the building during flooding; the flotation out of the building during flooding of any such contents shall be deemed by you and us

based on a Texas statute applicable to non-payment by an insurer of claims under its policy. Tex.Rev.Civ.Stat.Ann. art. 2226. In disputes arising under the National Flood Insurance Act of 1968, federal law governs the award of attorney's fees, *West, supra,* 573 F.2d at 879–881 (in which this circuit rejected an attempt to assess the flood insurer with damages and attorney's fees under a Louisiana statute applicable to the arbitrary failure of an insurer to pay a claim). No basis in federal law is shown for the assessment of attorney's fees against the government.

### *Conclusion*

For the reasons stated, we therefore affirm the district court's award of damages to the plaintiff Hanover, but we reverse the district court's award of attorney's fees to Hanover. Each party shall bear its own appellate costs.

AFFIRMED IN PART; REVERSED IN PART.

to establish the conclusive presumption that the contents were not reasonably secured to resist flotation.
44 C.F.R. Part 61, Appendix A(1), Article IV ("Property Covered"), Clause B (1983). No such language, however, or anything remotely similar to it, was included in Hanover's policy that applied to its 1981 flood-damage loss.