Christian WAGNER and Rosemarie Wagner, Plaintiffs,

v.

DIRECTOR, FEDERAL EMERGENCY MANAGEMENT AGENCY, Defendant.

Ms. Dolphia BLOCKER, Mr. and Mrs. James Digby, Dr. and Mrs. William Frumovitz, Mr. and Mrs. Edward Gomoll, Mr. and Mrs. Brian Grazer, Ms. Eleanor Mirsky, Mr. Pernell Roberts and Ms. Kara Knack, Plaintiffs,

v.

DIRECTOR, FEDERAL EMERGENCY MANAGEMENT AGENCY, Defendant.

Gerald BRESLAUER, Trustee of The Pacific Coast Highway Security Trust, and Robert Ferguson, Plaintiffs,

v.

DIRECTOR, FEDERAL EMERGENCY MANAGEMENT AGENCY, Defendant.

Samuel and Carolyn BLACK, Stephen and Brigette Bosustow, Sumi Tatsui, and Anthony and Hedy Stute, Plaintiffs,

v.

DIRECTOR, FEDERAL EMERGENCY MANAGEMENT AGENCY, Defendant.

Nos. CV 85–4395–AAH(Tx), CV 85–4910–AAH(Tx), CV 85–6269–AAH(Tx) and CV 85–8230–AAH(Tx).

United States District Court, C.D. California.

May 1, 1987.

As Amended June 1, 1987 Nunc Pro Tunc.

Lillick, McHose & Charles, Los Angeles, Cal. by Kenneth R. Chiate, Deborah J. Goldman, and John R. Caderette, Jr., for plaintiffs.

Robert C. Bonner, U.S. Atty., Frederick M. Brosio, Asst. U.S. Atty., Chief, Civ. Div., and Evelyn M. Matteucci, Asst. U.S. Atty., for defendant.

## DECISION

STATEMENT OF MATERIAL FACTS WITHOUT SUBSTANTIAL CONTROVERSY AND CONCLUSIONS OF LAW

HAUK, Senior District Judge.

## I. INTRODUCTION

This is an action for breach of an insurance contract arising out of the denial of plaintiffs' claims for damage to their homes covered by a flood insurance policy administered by the Federal Emergency Management Agency ("FEMA"), an agency of the Federal Government.[1] Plaintiffs here are homeowners in the Big Rock Mesa area of Malibu, Los Angeles County, California. Plaintiffs allege that they have suffered substantial damage to their homes and underlying properties due to a landslide which was reactivated and particularly aggravated by severe storms and flooding—a virtual deluge—during the winter of 1982–1983. Plaintiffs were insured against all "direct physical loss by flood" to their dwellings and personal property under the Standard Flood Insurance Policy ("SFIP") issued to each of them pursuant to the National Flood Insurance Program ("NFIP").[2]

Plaintiffs assert that the damage to their properties from the Big Rock Mesa landslide are losses covered by the SFIP and that FEMA is thereby liable to them for the maximum limits of their respective policies. Although separate actions to recover under the SFIP were initially filed by four groups of plaintiffs in Federal District Court, the above-captioned suits have now been consolidated here for resolution.[3]

Plaintiffs and defendant, Director of FEMA,[4] have filed cross-motions for sum-

---

**1.** In addition to the breach of insurance contract claim now at issue between the parties, plaintiffs in their respective complaints also originally alleged causes of action for breach of implied covenant of good faith and fair dealing, breach of statutory duty, intentional infliction of emotional distress, and negligent infliction of emotional distress. Plaintiffs have voluntarily dismissed these additional causes of action without prejudice, pursuant to Fed.R.Civ.P. 41(a)(1). In any event, except for those claims that may be brought against the Government pursuant to a specific waiver of sovereign immunity (as is the case here for claims of breach of governmentally-issued flood insurance policies), contract claims against the United States or an agency thereof seeking recovery for more than $10,000 must be brought in the United States Claims Court. 28 U.S.C. § 1346. Also, claims against the United States sounding in tort may be brought only after the jurisdictional prerequisites of the Federal Tort Claims Act are met. See Latz v. Gallagher, 562 F.Supp. 690, 692 (W.D.Mich.1983).

**2.** The NFIP came into being when Congress enacted the National Flood Insurance Act of 1968, as amended, 42 U.S.C. §§ 4001–4127.

**3.** The Big Rock Mesa landslide, and the resulting damage to homes in the area, has spawned a large volume of litigation in both Federal and State Courts. Although the factual occurrence of the flooding and reactivation of the landslide is common to each of the numerous lawsuits filed, neither the parties nor the theories of recovery in these suits are identical. The four suits consolidated here against the Director of the FEMA are limited solely to these plaintiffs' claims that FEMA breached its contractual obligation to insure their homes and property against loss by flood. As discussed in the text infra, jurisdiction by this Court over claims that FEMA breached its SFIP is based on federal question jurisdiction, 28 U.S.C. Section 1331, and a specific provision by Congress requiring that suits for breach of flood insurance contracts issued pursuant to the National Flood Insurance Act be brought by claimants in Federal District Court. 42 U.S.C. § 4072.

Other suits not at issue here have been brought in Federal District Court by other Big Rock Mesa residents against private insurance companies for recovery under homeowner's "all-risk" policies or under privately issued flood policies. These suits are based on diversity of citizenship jurisdiction, 28 U.S.C. Section 1332, for which state law provides the rule of decision. Erie R. Co. v. Thompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Typical of such diversity suits is Ash v. Safeco Insurance Co. of America, 652 F.Supp. 148 (C.D.Cal.1986).

A third set of suits has been brought by Big Rock Mesa residents in State Court against individuals and state, county and municipal entities. These suits have sought recovery under, inter alia, such state law causes of action as inverse condemnation, nuisance and failure to discharge mandatory duties.

**4.** The National Flood Insurance Act of 1968 originally provided that the NFIP (and all flood insurance policies issued pursuant thereto) was to be administered by the Secretary of Housing and Urban Development ("HUD"). 42 U.S.C. § 4011. However, 42 U.S.C. Section 4011 was amended in 1983, substituting the Director of the Federal Emergency Management Agency for

mary judgment to determine an issue of law; namely, whether the damage to plaintiffs' homes is a covered risk within the SFIP's definition of "flood", or, as defendant asserts, the damage is the result of a peril expressly and unambiguously excluded by the terms of the SFIP so that no liability under the policy exists.

## II. SUMMARY OF THE PARTIES' ARGUMENTS

In making their claims, plaintiffs first posit that one of the SFIP's alternative definitions of "flood" requiring that there be "a partial or complete inundation of normally dry land areas" was satisfied when extraordinary rainfall during the winter of 1982–1983, combined with effluent from local septic systems, infiltrated and thus inundated the normally dry subsurface beneath plaintiffs' homes.

Plaintiffs next argue that although due to the contributory effect of septic system effluent the rain deluge was not the sole cause of the flood, it is enough for recovery if the rainfall was at the very least a concurrent *proximate cause* of the damage. Also, under the same principles of concurrent *proximate causation,* the flood rather than the landslide was the proximate and therefore, immediate cause of damage. The flood "set in motion" the catastrophic events, including the landslide and its effects which, having been proximately caused by the flood, are within the SFIP's coverage.

Defendant FEMA, on the other hand, contends that the definition of "flood" set forth in the SFIP requires that plaintiffs' homes, and not merely the subsurfaces beneath them, must be completely or partially inundated by water or mudflow.

Moreover, FEMA argues that the SFIP provides that the claimed loss must be the "direct" result of flood. In other words, common law principles of proximate cause, no matter how broadly construed, are not applicable to the SFIP which is governed only by federal statute and administrative regulations as interpreted by Federal Courts. FEMA further asserts that in the instant circumstances of the Big Rock Mesa disaster the direct cause of the damage was a landslide, not a flood. Because, adds FEMA, under a strict interpretation of the SFIP coverage is excluded for all losses caused by earth movement, including landslides, plaintiffs' losses do not fall within the SFIP's ambit.

FEMA goes on to argue that even if the damage to plaintiffs' homes is determined to be within the SFIP's scope of coverage, plaintiffs' claims are barred because they failed to comply with the express (albeit oppressive) terms of the policy which require that a sworn proof of loss be submitted to FEMA within 60 days of the loss. Finally, because 42 U.S.C. Section 4072 requires that a claimant alleging breach of the SFIP bring suit in Federal District Court within one year from the date that denial of the claim was mailed by FEMA, FEMA asserts that the suits by four of the plaintiffs are time-barred.[5]

In response, plaintiffs argue that FEMA is equitably estopped from now raising plaintiffs' failure to submit proofs of loss within 60 days; and that the one-year limitation posed as a so-called "time bar" against four of the plaintiffs' claims was tolled by subsequent letters of denial mailed by FEMA.

## III. STATEMENT OF MATERIAL FACTS WITHOUT SUBSTANTIAL CONTROVERSY

1. The individual plaintiff homeowners here are Christian and Rosemarie Wagner, Dolphia Blocker, James and Mary Digby, William and Adrian Frumovitz, Edward Gomoll, Brian and Debra Grazer, Eleanor Mirsky, Pernell Roberts, Kara Knack, Gerald Breslauer, as Trustee of the Pacific Coast

the Secretary of Housing and Urban Development. Pub.L. 98–181, § 451(d)(2), 97 Stat. 1153, 1229, 1229–30 (1983). Previous to that, all functions vested in the Secretary of HUD relating to the NFIP were transferred to the Director of FEMA under Section 202 of the Reorganization Plan No. 3 of 1978, 5 U.S.C. Appendix 1.

5. Plaintiffs Dolphia Blocker, Eleanor Mirsky, James and Mary Digby, and Gerald Breslauer filed delinquent suits. These plaintiffs argue, however, that FEMA mailed them second letters of denial which supercede and extend the terms of the first letters of denial for purposes of the statute of limitations.

Highway Security Trust, Robert Ferguson, Samuel and Carolyn Black, Stephen and Brigette Bosustow, Sumi Tatsui, and Anthony and Hedy Stute.

2. All of the plaintiffs obtained written contracts for flood insurance issued pursuant to the NFIP and administered by defendant, Director of FEMA.

3. These written insurance contracts are the SFIP's which cover plaintiffs' designated real and personal property against all "direct loss by flood" to the extent of the coverage limits of each individual plaintiff's policy.[6]

4. In September of 1983 the existence of the Big Rock Mesa flood-induced landslide was announced to the public, including plaintiffs, by officials of Los Angeles County.

5. Although the landslide is ancient in its origins, the reactivation of the landslide in the winter of 1982–1983 was proximately caused by an unusual flood, resulting in a higher than normal level of ground water within the perimeter of the slide surface area.

6. According to the uncontradicted deposition testimony of expert geologists, both the unusually heavy and inundating rainfall during the winter of 1982–1983, and the septic system effluent from defective septic equipment, proximately caused and contributed to the catastrophic buildup of ground water in the area resulting in the subsequent destabilization of the ground under plaintiffs' homes and the damage it caused to them.

7. Plaintiffs' homes were significantly and proximately damaged each in an amount greatly in excess of the limits of their respective policies (see n. 6, *supra*) by the reactivated landslide induced by the unusual, inundating flood, even though no floodwater or mudflow actually entered the surfaces of plaintiffs' homes, residences or dwelling places.

## IV. CONCLUSIONS OF LAW AND ANALYSIS

### 1. *Jurisdiction*

This Court has subject matter jurisdiction over actions for breach of a National Flood Insurance contract, such as the SFIP here, issued pursuant to the National Flood Insurance Act of 1968. 42 U.S.C. § 4072. FEMA is an agency of the Federal Government and the Government's waiver of immunity under 42 U.S.C. § 4072 is limited to actions based on the flood insurance policy itself.

### 2. *Summary Judgment*

Disposition of an action by summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law in the context of the undisputed material facts. Fed.R.Civ.P. 56(c); *Aronsen v. Crown Zellerbach*, 662 F.2d 584, 591 (9th Cir.1981). The facts must be viewed and inferences drawn in the manner most favorable to the non-moving party. *Retail Clerks Union Local 648, AFL–CIO v. Hub Pharmacy, Inc.*, 707 F.2d 1030, 1033 (9th Cir.1983).

■ Because in this case the material facts upon which the parties respectively claim and deny liability under the insurance policy are not in dispute, and because the existence of FEMA's liability depends solely upon a construction of the policy, the question of liability is one of law, and not

---

**6.** Such coverage limits are as follows:

a. Christian and Rosemarie Wagner, Policy No. FL1–9412–2005–3—$77,200;

b. Dolphia Blocker, Policy No. FL1–5222–3450–7—$185,000;

c. James and Mary Digby, Policy No. FL1–9307–7559–6—$143,000;

d. William and Adrienne Frumovitz, Policy No. FL2–0007–0271–8—$185,000;

e. Edward Gomoll, Policy No. FL2–0152–2059–9—$185,000;

f. Brian and Deborah Grazer, Policy No. FL2–0116–7828–7—$185,000;

g. Eleanor Mirsky, Policy No. CL2–0111–6465–0—$110,000;

h. Pernell Roberts and Kara Knack, Policy No. FL2–0004–0325–9—$185,000;

i. Gerald Breslauer, Trustee of the Pacific Coast Highway Security Trust, Policy No. FL1–9473–8086–9—$185,000;

j. Robert Ferguson, Policy No. FL2–0019–2023–4—$200,000;

k. Samuel and Carolyn Black, Policy No. FL1–9414–4964–5—$185,000;

l. Stephen and Brigette Bosustow, Policy No. FL2–0127–9593–2—$143,000;

m. Sumi Tatsui, Policy No. FL2–0131–4155–7—$120,000;

n. Anthony and Hedy Stute, Policy No. FL2–0005–2159–6—$185,000.

fact, for the Court to decide. *Atlas Pallet, Inc. v. Gallagher,* 725 F.2d 131, 134 (1st Cir.1984); *Edison v. Reliable Life Insurance Co.,* 664 F.2d 1130, 1131 (9th Cir. 1981).

### 3. *Federal Law Governs The Construction of the SFIP*

Plaintiffs and defendant disagree on what the legal effect is of the wording in the SFIP which provides that FEMA will "[I]nsure you and your legal representatives against all 'Direct Physical Loss By Flood' to the insured property as defined in the 'Definitions Section' of this Agreement ..." SFIP preamble, 44 C.F.R. § 61 App. A(1). The crux of this dispute hinges on what legal theory of causation should apply to determine whether or not the operative occurence of a flood, which in turn causes higher than normal groundwater levels, which in turn causes subsurface destabilization, which in turn causes a landslide, which in turn causes damage to homes, residences and dwelling places, constitutes a covered risk under the SFIP.

It is now well settled that when interpreting the provisions of an insurance policy issued pursuant to the NFIP, federal common law controls and neither the statutory nor decisional law of any particular state, even of that in which the insured property lies, is applicable. *Brazil v. Guiffrida,* 763 F.2d 1072, 1075 (9th Cir.1985); *Hanover Building Materials v. Guiffrida,* 748 F.2d 1011, 1013 (5th Cir.1984); *Atlas Pallet Inc. v. Gallagher,* 725 F.2d 131, 135 (1st Cir.1984); *West v. Harris,* 573 F.2d 873, 881 (5th Cir.1978), *cert. denied,* 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979). Instead, Federal Courts are to apply the "traditional common law technique of decision by drawing upon standard insurance principles." *Brazil v. Guiffrida,* 763 F.2d at 1075.

In *Hanover Building Materials, Inc. v. Guiffrida,* 748 F.2d 1011 (5th Cir.1984), the Fifth Circuit Court of Appeals identified a number of relevant "standard insurance law principles" to be applied in interpreting National Flood Insurance Policies:

> The first is that, "if the language of a policy is clear and unambiguous, it should be accorded its natural meaning." The second is that, "if the meaning of a policy provision is doubtful and the language used is susceptible of different constructions, the one most favorable to the insured is adopted." The third is that the rule favoring the insured where ambiguity exists "should not be applied automatically: Insurance contracts are to be reasonably construed consanant with the apparent objective and intent of the parties." The fourth principle is that, "in deciding what a reasonable construction of the contested provisions is, the material we may draw from consists of those provisions, the policy as a whole, and the apparent objectives of the parties in establishing this kind of contractual relationship." The final principal relevant is that, "if the meaning of the policy terms remains in the end unclear, the policy is generally construed in favor of the insured in order to promote the policy's objective of providing coverage."

*Id.* at 1013 (citations omitted); *accord Brazil v. Guiffrida,* 763 F.2d at 1075.

With these principles in mind, we now turn to the SFIP to determine whether or not coverage under the policy exists in this case.

### 4. *The Standard Flood Insurance Policy*

By creating the NFIP as part of the National Flood Insurance Act of 1968, Congress established a federally subsidized program to provide flood insurance to American citizens at an affordable price. As stated in the Act, "[f]lood disasters have created personal hardships and economic distress which ... have placed an increasing burden on the Nation's Resources." 42 U.S.C. § 4001(a)(1). However, because Congress found it "uneconomic for the private insurance industry alone to make flood insurance available to those in need of such protection on reasonable terms and conditions," *id.* at § 4001(b)(1), Congress authorized "a flood insurance program by means of which flood insurance ... [could] be made available on a nationwide basis through the cooperative efforts of the federal government and the private insurance industry." *Id.* at § 4001(d)(1).

The National Flood Insurance Act authorizes the Director of FEMA to "provide by regulation for general terms and conditions of insurability which shall be applicable to property owners eligible for flood insurance coverage under [the Act]." 42 U.S.C. § 4013(a).

Pursuant to this Congressional grant of authority, the Director of FEMA has issued regulations pertaining to coverage. Included within these administrative regulations are several forms of the SFIP, each with different contents.

The form and content of the SFIP which was issued and applies to each plaintiff here is set forth at 44 C.F.R. § 61 App. A(1). It insures against "[A]ll Direct Physical Loss By Flood."

"Direct Physical Loss By Flood" is defined by the policy as meaning "[A]ny loss in the nature of actual loss of or physical damage, evidenced by physical changes, to the insured property (building or personal property contents) which is directly and *proximately* caused by a 'flood'...."

"Flood" is then defined by the SFIP as follows:

A. A general and temporary condition of partial or complete inundation of normally dry land areas from:

1. The overflow of inland or tidal waves.

2. The unusual and rapid accumulation or runoff of surface waters from any source.

3. Mudslides (i.e. mudflows) which are proximately caused by flooding as defined in subparagraph A-2 above and are akin to a river of liquid and flowing mud on the surfaces of normally dry land areas, including your premises, as when earth is carried by a current of water and deposited along the path of the current.

B. The collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by waves or currents of water exceeding the cyclical levels which result in flooding as defined in A-1 above.

The SFIP excludes from coverage loss caused by "[E]arthquake, land sinkage, land subsidence, landslide, gradual erosion, or any other earth movement except such mudslides (i.e. mudflows) or erosion as is covered under the peril of flood."

■ Therefore, to recover under the SFIP, plaintiffs must establish by the evidence that the damage to their insured property was caused proximately and directly by "flood" as defined by the policy.

5. *The Requirement of Inundation Has Been Met*

■ As described, the SFIP provides coverage for "flood" when there is "partial or complete inundation" of the insured property by water or mudflow. FEMA contends that for there to be actual "inundation," whether partial or complete, flood water must physically enter the insured plaintiffs' homes. Although some support for this narrow, crabbed definition of inundation is found in the case law, *see e.g., Beck v. Director, Federal Emergency Management Agency,* 534 F.Supp. 516 (N.D.Ohio 1982); *Cross Queen, Inc. v. Director, Federal Emergency Management Agency,* 516 F.Supp. 806 (D.V.I.1980), this Court is persuaded that the better reasoned decisions hold that when water produced by severe rain storms thoroughly infiltrates the ground beneath the insured's home, causing destabilization of the home's foundation, then "inundation" within the meaning of the SFIP has occurred.[7] As

---

7. The District Court in *Beck,* 534 F.Supp. at 518, employed the following dictionary definition of "inundation" to deny coverage to a claimant whose home was not literally covered by floodwater: "Inundation" is the "rising and spreading of water over [land or buildings] not usually submerged." Webster's Third New International Dictionary 1188 (1971). Although dictionary definitions are often helpful to ascertain the common understanding of terms and phrases, such definitions should not be solely relied upon for guidance. In fact, the sterile application of such definitions often misses the broader understanding of terms woven into the language and terminology of a homogeneous group. *See, e.g., United States v. Naaman,* 813 F.2d 1577, 1578–79 (9th Cir.1987).

Shakespeare, chronicling the counsel of King John to his attendants, used the term "inundation" to convey the forced acquiesence of his

stated by the Court of Appeals for the Eleventh Circuit in *Quesada v. Director, Federal Emergency Management Agency,* 753 F.2d 1011, 1013 (11th Cir.1985), "We discern no sound reason why coverage [under the SFIP] should be denied solely because the water did not rise so high as to actually enter the living area of [insured's] home." *See also Gibson v. Secretary of U.S. Department of Housing & Urban Development,* 479 F.Supp. 3 (M.D.Pa.1978) (loss proximately caused by flood even though flood water did not actually physically enter insured's home).

### 6. *The Flood Was The Proximate Cause of The Damage*

FEMA, as previously indicated above, further contends that even if the circumstances of the present case do constitute inundation of plaintiffs' insured premises, and thus a "flood" under the SFIP, the flood must also be the *immediate cause* of the claimed damage. Here, FEMA argues, the immediate cause of the damage to plaintiffs' homes was a landslide, a form of peril specifically excepted from coverage under the SFIP's "earth movement" exclusion.

■ For this Court to adopt such a rigid and unyielding theory as proposed by FEMA would violate fundamental principles of proximate causation. As stated by a respected commentator on standard insurance law principles,

A cause is proximate when it sets in motion a chain of events which result in the loss without the intervention of any new or independent force.

When the peril specifically insured against sets other causes in motion which, in an unbroken sequence and connection between the act and final injury, produce the final result for which the insured seeks to recover under his policy, the peril insured against will be regarded as the proximate cause of the entire loss,

so as to render the insurer liable for the entire loss within the limits fixed by the policy.

18 G. Couch, *Cyclopedia of Insurance Law* § 74:709 (2d ed. 1983), and cases cited therein.

A broader application of the principle of proximate cause than offered by FEMA has been accepted by the Eleventh Circuit in a case involving facts similar to those in the present case. In *Quesada v. Director, Federal Emergency Management Agency,* 753 F.2d 1011 (11th Cir.1985), a tropical storm passing through southern Florida left rainfall that, after recession of the rain waters, caused the saturated fill beneath the insured's home to compact and move downward, thereby depriving the slab foundation of support. As a result, the slab foundation also shifted downward, causing cracking in the floors and walls of the house. FEMA also argued there, as it has here, that the SFIP's "earth movement" exclusion operated to remove the damage from coverage. In holding that the "earth movement" exclusion was not applicable, the Eleventh Circuit replied:

The government's contention that the "earth movement" exclusion precludes recovery is really grounded on a very strained proximate cause theory, to wit, the nearest and most immediate "cause" of the damage was the compaction of the soil beneath [the insured's] home. Though in the most literal sense this may be true, we cannot ignore the uncontradicted fact that the compaction would not have occurred but for the flooding and did in fact occur simultaneously therewith. If we deny coverage in this factual situation, we are hard pressed to imagine a scenario, other than the actual washing away of a house, where coverage would exist.

*Id.* at 1014.

■ This Court adopts the reasoning of *Quesada.* Here, the heavy rainfall during

---

British subjects to a seemingly overwhelming French invasion:

Now keep your holy word: go meet the French,
And from his holiness use all your power
To stop their marches fore we are inflam'd.
Our discontented countries do revolt,

Our people quarrel with obedience,
Swearing allegiance and the love of soul
To stranger blood, to foreign royalty.
This *inundation* of mistemper'd humour
Rests by you only to be qualified.
Shakespeare, *The Life and Death of King John,* Act V, Scene I (emphasis added).

the winter of 1982–1983, coupled with septic system effluent, so saturated the ground in the Big Rock Mesa area that the land underlying plaintiff's homes became destabilized and the "ancient" landslide was reactivated. Because the facts of this case support a finding that a "flood" occurred as defined by the SFIP, and because that "flood" set in motion the events leading to the damage to plaintiffs' homes, coverage exists under the policy. Although the landslide, an excluded risk, was, in a "strained" sense, the immediate cause of the damage, the water saturation was and is the proximate cause.

### 7. FEMA is Estopped From Asserting the Failure of Plaintiffs to File a Proof of Loss Within 60 Days

■ Estoppel ordinarily does not lie against the Federal Government or its agencies. *Bolton v. Guiffrida,* 569 F.Supp. 30, 33 (N.D.Cal.1983). However, the Ninth Circuit has permitted estoppel against the Government where basic notions of "justice and fair play require it." *United States v. Lazy FC Ranch,* 481 F.2d 985, 988 (9th Cir.1973). "Estoppel can be interposed against the federal government where the conduct of the government is relied upon to the detriment of the party seeking to interpose an estoppel, where the government's conduct threatens to work a serious injustice, and where the public's interest would not be unduly damaged by the imposition of estoppel." *Bolton v. Guiffrida,* 569 F.Supp. at 533 (citing *United States v. Lazy FC Ranch,* 481 F.2d at 989).

Here, there is evidence that although September 1983 was designated as the date of loss and plaintiffs' proofs of loss were not submitted until some months later, it was not until the summer of 1984 that FEMA first raised the issue of failure to submit the proofs of loss within 60 days. Plaintiffs reasonably relied, to their detriment, on FEMA's own delay in not raising the subject of the proofs of loss for an appreciable period after FEMA had become aware and actually began investigation of claims in the Big Rock Mesa area.

In view of the congressional purpose in providing flood insurance to American homeowners who otherwise could not readily obtain such protection, this Court cannot blindly adhere to a stunted technicality in this case which would in fact work a serious and grave injustice upon these plaintiffs whose residences have been so severely damaged by a flood. Furthermore, the public interest as a whole is better served when the citizenry obtains from the insurer—albeit a Government agency—the obvious benefits contracted for in the event of a catastrophe.

■ For these reasons, FEMA is equitably estopped from asserting plaintiffs' failure to timely file proofs of loss as a defense to plaintiffs' otherwise valid claims under the SFIP.

### 8. The Claims of Four of The Plaintiffs Are Not Barred By The Statute of Limitations

■ Although FEMA communicated with plaintiffs Blocker, Mirsky, Digby and Breslauer more than one year before they filed suit in Federal District Court, in each instance FEMA sent second letters of denial of their respective claims within the one year period prior to the date these plaintiffs actually did bring suit. These second letters of denial superseded the first notices of denial and are thereby controlling for purposes of the statute of limitations. *See Horefitis v. NFIA,* 437 F.Supp. 794, 796 (E.D.Mich.1977). These four plaintiffs' suits challenging FEMA's denial of their claims were, therefore, timely filed in this Court.

### CONCLUSION

This Court, mindful of the purpose and intent of the congressional provision for flood insurance, and applying standard insurance principles to the SFIP here at issue, concludes that the sequence of events, involving heavy and unusual rainfall resulting in the accumulation of water in otherwise dry subsurface land areas beneath plaintiffs' homes, which in turn caused destabilization of the land and damage to plaintiffs' homes, residences, and dwelling places, is a covered risk under the SFIP. Further, because plaintiffs relied to their

detriment on FEMA's own failure to timely raise the issue of plaintiffs' failure to file proofs of loss within 60 days, and the fact that FEMA would not be prejudiced by the waiver of this technical requirement, FEMA is equitably estopped from asserting the "60 days proof of loss" requirement as a defense to its liability. Finally, FEMA sent superseding letters of denial to four of the plaintiffs, and caused the statute of limitations to be tolled, making each of these four plaintiffs' suits timely.

Let judgment be entered accordingly in favor of plaintiffs.

## JUDGMENT

Plaintiffs' and defendant's, Director, Federal Emergency Management Agency, cross-motions for summary judgment having come on regularly for hearing before the Honorable A. Andrew Hauk, United States District Judge, and the Court having considered the pleadings, papers, exhibits and memoranda of points and authorities submitted in connection with such motions, and in accordance with the Decision, Statement of Material Facts Without Substantial Controversy and Conclusions of Law filed and entered herein, and good cause appearing,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1. That plaintiffs' losses are covered by their respective National Flood Insurance Policies and plaintiffs' motion for summary judgment is hereby granted, and defendant's cross-motion for summary judgment is denied.

2. That each plaintiff herein shall have and recover from defendant, Director, Federal Emergency Management Agency, the full costs of repairing the damage to their respective homes, residences and dwelling places up to and including, the full building coverage limits available under their respective National Flood Insurance Policies, to wit:

a. Christian and Rosemarie Wagner, Policy No. FL1–9412–2005–3—$77,200.

b. Dolphia Blocker, Policy No. FL1–5222–3450–7—$185,000;

c. James and Mary Digby, Policy No. FL1–9307–7559–6—$143,000;

d. William and Adrienne Frumovitz, Policy No. FL2–0007–0271–8—$185,000;

e. Edward Gomoll, Policy No. FL2–0152–2059–9—$185,000;

f. Brian and Deborah Grazer, Policy No. FL2–0116–7828–7—$185,000;

g. Eleanor Mirsky, Policy No. CL2–0111–6465–0—$110,000;

h. Pernell Roberts and Kara Knack, Policy No. FL2–0004–0325–9—$185,000;

i. Gerald Breslauer, Trustee of the Pacific Coast Highway Security Trust, Policy No. FL1–9473–8086–9—$185,000;

j. Robert Ferguson, Policy No. FL2–0019–2023–4—$200,000;

k. Samuel and Carolyn Black, Policy No. FL1–9414–4964–5—$185,000;

l. Stephen and Brigette Bosustow, Policy No. FL2–0127–9593–2—$143,000;

m. Sumi Tatsui, Policy No. FL2–0131–4155–7 $120,000;

n. Anthony and Hedy Stute, Policy No. FL2–0005–2159–6—$185,000.

3. That plaintiffs, individually, shall have and recover their respective reasonable costs of suit incurred herein from defendant which costs shall be individually taxed by the Clerk of the Court, and defendant shall bear its own costs of suit incurred herein.

4. That the Clerk of the Court shall serve copies of the Statement of Material Facts Without Substantial Controversy and Conclusions of Law, as well as this Judgment, upon the respective attorneys of record for all parties herein.