Christian WAGNER and Rosemarie Wagner, Plaintiffs–Appellees,

v.

DIRECTOR, FEDERAL EMERGENCY MANAGEMENT AGENCY, Defendant-Appellant.

Ms. Dolphia BLOCKER, Mr. & Mrs. James Digby, Mr. & Mrs. William Frumovitz, Mr. & Mrs. Edward Gomoll, Mr. & Mrs. Brian Grazer, Ms. Eleanor Mirsky, Mr. Pernell Roberts, Ms. Kara Knack, Plaintiffs–Appellees,

v.

DIRECTOR, FEDERAL EMERGENCY MANAGEMENT AGENCY, Defendant–Appellant.

Gerald BRESLAUER, Trustee of the Pacific Coast Highway Security Trust, and Robert Ferguson, Plaintiffs–Appellees,

v.

DIRECTOR, FEDERAL EMERGENCY MANAGEMENT AGENCY, Defendant–Appellant.

Samuel and Carolyn BLACK, Stephen and Brigette Bosustow, Sumi Tatsui, Anthony and Hedy Stute, Plaintiffs–Appellees,

v.

DIRECTOR, FEDERAL EMERGENCY MANAGEMENT AGENCY, Defendant–Appellant.

No. 87–6108.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 9, 1988.

Decided May 20, 1988.

516

Gregory C. Sisk, Civ. Div., Dept. of Justice, Washington, D.C., for defendant-appellant.

Deborah J. Goldman, Lillick McHose & Charles, Los Angeles, Cal., for plaintiffs-appellees.

Before HUG, ALARCON and KOZINSKI, Circuit Judges.

KOZINSKI, Circuit Judge:

Plaintiffs sue to recover benefits under a Standard Flood Insurance Policy (SFIP) issued pursuant to the National Flood Insurance Act, 42 U.S.C. §§ 4001–4128 (1982 &

Supp. III 1985). We consider whether they have satisfied the procedural requirements for maintaining the action and whether the SFIP covers losses caused by a flood-induced landslide.

### Facts

Plaintiffs own homes in the Big Rock Mesa area of Malibu, California. Their properties are situated on an ancient landslide that had been dormant. Unusually heavy rainfall during the winter of 1982–1983 and the discharge of effluent from defective septic systems raised the ground water level in the Big Rock Mesa area, saturating and destabilizing the subsurface soil. The rise in ground water thus contributed to the reactivation of the landslide, damaging plaintiffs' property and threatening further damage should the landslide continue.

Each of the plaintiffs had insured his property against "all direct physical loss by flood" with an SFIP issued by the National Flood Insurance Program (NFIP), which provides federally subsidized flood insurance at or below actuarial rates. Since 1979, the Director of the Federal Emergency Management Agency (FEMA) has administered the program for the federal government through the Federal Insurance Administration.[1] In order to qualify for flood insurance benefits, a claimant must submit a signed and sworn proof of loss to FEMA within 60 days after the loss has occurred. SFIP, art. VIII, ¶ I(4), *published at* 44 C.F.R. pt. 61, App. A(1) (1982).[2] If FEMA disallows the claim, the claimant must file any action in federal district court within one year after the mailing of the notice of disallowance. 42 U.S.C. § 4072 (1982); SFIP, art. VIII, ¶ Q.

Plaintiffs advised FEMA informally of the loss and eventually most of them filed the required formal proofs of loss. None did so, however, until April 1984, seven months after Los Angeles County officials had notified them that their homes were located in an unstable area. In February 1984, FEMA sent adjusters and an engineering firm to conduct a limited investigation of plaintiffs' claims. The investigators determined that the properties had not been inundated by flowing surface waters and that all of the damage resulted from the landslide. FEMA thereupon sent letters to plaintiffs denying coverage on the ground that the policy excluded the type of loss they had suffered.

Plaintiffs filed four separate actions against FEMA for breach of the insurance contract. After the actions were consolidated, both sides filed motions for summary judgment. The district court granted plaintiffs' motion and then granted final judgment in the amount of each plaintiff's policy limit.

### Contentions of the Parties

FEMA argues that the district court erred with respect to both the procedural and substantive issues raised by plaintiffs' claims. It contends that all plaintiffs are barred from maintaining their suits because they failed to submit timely proofs of loss, while some are also barred because they brought suit more than a year after FEMA disallowed their claims. As to any plaintiffs that successfully vault the procedural hurdles, FEMA argues that their losses were caused not by a flood but by a landslide, a hazard specifically excluded by the SFIP.

Plaintiffs, on the other hand, argue that failure to file a timely proof of loss does not bar suit and that, in any event, FEMA is estopped from relying on that ground.

**1.** *See* 42 U.S.C. §§ 4011, 4013(a) (Supp. III 1985); *see also* Reorganization Plan No. 3 of 1978, §§ 202, 304, 43 Fed.Reg. 41,943, 41,944–45 (1978) (transferring functions from Secretary of Housing and Urban Development to Director of FEMA as of April 1, 1979); Pub.L. No. 98–181, § 451(d), 1983 U.S.Code Cong. & Admin. News (97 Stat.) 1153, 1229 (amending National Flood Insurance Act to substitute Director of FEMA for Secretary of HUD).

**2.** While the other plaintiffs were insured under the SFIP Dwelling Form, plaintiff Ferguson was covered by a different policy, the General Property Form. *See* 44 C.F.R. pt. 61, App. A(2) (1982). While we refer to the provisions of the Dwelling Form, for purposes of our decision there are no material differences between the two forms.

As to the statute of limitations, plaintiffs argue that letters they received from FEMA after the initial disallowance restarted the limitations period and that their lawsuits were therefore timely. On the merits, plaintiffs contend that the subsurface saturation constituted a flood within the meaning of the policy and that their losses were the direct, proximate result of that flood.

## Discussion

### I

■■■ Before deciding whether the SFIP covers the losses suffered by plaintiffs, we must first determine whether they have satisfied the prerequisites established by the policy and federal regulations for maintaining this action. The SFIP's procedural requirements must be taken seriously: They constitute conditions precedent to a waiver by the federal government of its sovereign immunity, conditions that define our jurisdiction. *See, e.g., United States v. Mottaz*, 476 U.S. 834, 841, 106 S.Ct. 2224, 2229, 90 L.Ed.2d 841 (1986); *Block v. North Dakota*, 461 U.S. 273, 287, 103 S.Ct. 1811, 1819, 75 L.Ed.2d 840 (1983); *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). Because waivers of sovereign immunity are construed narrowly, *Lehman v. Nakshian*, 453 U.S. 156, 160–61, 101 S.Ct. 2698, 2701–02, 69 L.Ed.2d 548 (1981), the conditions of an insurance policy offered pursuant to a congressionally mandated program, such

as the NFIP, must be strictly observed. *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 385, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947); *see Rock Island, Ark. & La.R.R. v. United States*, 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920) (Holmes, J.) ("[m]en must turn square corners when they deal with the Government"). FEMA warned plaintiffs as much: "You may not sue us to recover money under this policy unless you have complied with all the requirements of the policy." SFIP, art. VIII, ¶ Q. We examine whether plaintiffs have done so.

### A. Proof of Loss

The SFIP requires claimants to submit a signed and sworn proof of loss setting out the nature, cause and value of the loss, as well as their interest in the damaged property.[3] The policy requires that the formal proof be submitted to FEMA within 60 days after the loss. None of the plaintiffs filed a proof of loss within 60 days of first learning of the loss in September 1983.

1. Plaintiffs argue that FEMA is equitably estopped from asserting this procedural default as a defense. The district court agreed, concluding that "[p]laintiffs reasonably relied, to their detriment, on FEMA's own delay in not raising the subject of the proofs of loss for an appreciable period after FEMA had become aware and actually began investigation of claims in the Big Rock Mesa area." *Wagner v. Di-*

---

**3.** The relevant paragraph of the SFIP provides:

Within 60 days after the loss, send us a proof of loss, which is your statement as to the amount you are claiming under the policy signed and sworn to by you and furnishing us with the following information.

a. The date and time of the loss,

b. A brief explanation of how the loss happened,

c. Your interest in the property damaged (for example, "owner") and the interests, if any, of others in the damaged property,

d. The actual cash value of each damaged item of insured property after depreciation is deducted from the cost of replacement of the property (unless the policy's "REPLACEMENT COST PROVISIONS" apply, in which case the replacement cost without allowance for depreciation should be furnished) and the amount of damages sustained,

e. Names of mortgagees or anyone else having a lien, charge or claim against the insured property,

f. Details as to any other contracts of insurance covering the property, whether valid or not,

g. Details of any changes in ownership, use, occupancy, location or possession of the insured property since the policy was issued,

h. Details as to who occupied any insured building at the time of loss and for what amount,

i. The amount you claim is due under this policy to cover the loss, including statements concerning:

(i) The limits of coverage stated in the policy,

(ii) The cost to repair or replace the damaged property (whatever costs less).

SFIP, art. VIII, ¶ I(4).

rector, FEMA, 658 F.Supp. 1530, 1538 (C.D.Cal.1987). The court held that estoppel was appropriate because plaintiffs' interest in obtaining flood insurance benefits outweighed FEMA's interest in enforcement of this "stunted technicality." *Id.*

The Supreme Court has long held that the federal government "may not be estopped on the same terms as any other litigant" from insisting on compliance with legal requirements. *Heckler v. Community Health Servs., Inc.,* 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984); *see also Schweiker v. Hansen,* 450 U.S. 785, 788, 101 S.Ct. 1468, 1470, 67 L.Ed.2d 685 (1981) (per curiam); *Merrill,* 332 U.S. at 383, 68 S.Ct. at 2; *Lee v. Munroe & Thornton,* 11 U.S. (7 Cranch) 366, 369, 3 L.Ed. 373 (1813). Because the federal government's "fiscal operations are so various, and its agencies so numerous and scattered," there is always a risk that misinformed agency employees and representatives may err in interpreting statutes and regulations, and even "the utmost vigilance would not save the public from the most serious losses." *United States v. Kirkpatrick,* 22 U.S. (9 Wheat.) 720, 735, 6 L.Ed. 199 (1824); *see Phelps v. FEMA,* 785 F.2d 13, 17 (1st Cir.1986). Moreover, "[t]he government could scarcely function if it were bound by its employees' unauthorized representations." *Goldberg v. Weinberger,* 546 F.2d 477, 481 (2d Cir.1976), *cert. denied sub nom. Goldberg v. Califano,* 431 U.S. 937, 97 S.Ct. 2648, 53 L.Ed.2d 255 (1977).

■ The Supreme Court has stopped short, however, of holding "that there are *no cases* " in which the public interest behind the government estoppel doctrine "might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government."

*Community Health Services,* 467 U.S. at 60–61, 104 S.Ct. at 2224–25 (emphasis original). We have therefore adopted a less absolute but nevertheless stringent test: A party seeking to raise estoppel against the government must establish "affirmative misconduct going beyond mere negligence"; even then, "estoppel will only apply where the government's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage by imposition of the liability." *Morgan v. Heckler,* 779 F.2d 544, 545 (9th Cir.1985); *Mukherjee v. INS,* 793 F.2d 1006, 1008–09 (9th Cir.1986). "A mere failure to inform or assist does not justify application of equitable estoppel." *Lavin v. Marsh,* 644 F.2d 1378, 1384 (9th Cir.1981); *Santiago v. INS,* 526 F.2d 488, 493 (9th Cir.1975), *cert. denied,* 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976); *see also INS v. Hibi,* 414 U.S. 5, 8–9, 94 S.Ct. 19, 21–22, 38 L.Ed.2d 7 (1973) (per curiam).[4]

■ The record is devoid of any misrepresentations by FEMA amounting to "affirmative misconduct." Plaintiffs' failure to file the proofs of loss is based entirely on their own confusion about whether FEMA would hold them to the requirement of a timely proof of loss. This confusion persisted in the face of FEMA's repeated instructions that claimants must comply with the SFIP's requirements, instructions based on lawfully promulgated regulations. *See* 44 C.F.R. § 61.4(a) (1982). Both contract and regulations provide the SFIP "cannot be amended nor can any of its provisions be waived without the express written consent of the Federal Insurance Administrator." SFIP, art. VIII, ¶ D; *see* 44 C.F.R. § 61.13(d) (1982) ("no provision ... shall be altered, varied, or waived other than through the issuance of an appropriate amendatory endorsement, approved by the [Federal Insurance] Administrator as to form and substance for uniform use"). In

4. Plaintiffs argue that the NFIP represents a proprietary function of the federal government, and that the doctrine against government estoppel does not apply where the government is not acting in a sovereign capacity. In the closely analogous context of federal crop insurance, however, the Supreme Court firmly rejected the notion that the sovereign/proprietary distinction affects the application of the government estoppel doctrine. *See Merrill,* 332 U.S. at 383–84, 68 S.Ct. at 2–3; *see also Phelps,* 785 F.2d at 17; *cf. Federal Land Bank v. Board of County Comm'rs,* 368 U.S. 146, 150–51, 82 S.Ct. 282, 285–86, 7 L.Ed.2d 199 (1961) ("our decisions have made it clear that the Federal Government performs no 'proprietary' functions").

addition, the SFIP candidly warns potential claimants not to rely on FEMA's assistance in complying with the proof of loss requirement:

The insurance adjuster whom we hire to investigate your claim may furnish you with a proof of loss form, and she or he may help you to complete it. *However, this is a matter of courtesy only, and you must still send us a proof of loss within 60 days after the loss even if the adjuster does not furnish the form or help you to complete it.* In completing the proof of loss, you must use your own judgment concerning the amount of loss and the justification for that amount; the adjuster is not authorized to approve or disapprove claims or to tell you whether your claim will be approved by us.

SFIP, art. VIII, ¶ I(5) (emphasis added).

In short, we find nothing in the conduct of FEMA or its agents that would amount to "affirmative misconduct" falling below "some minimum standard of decency, honor, and reliability." *Community Health Services,* 467 U.S. at 61, 104 S.Ct. at 2224; *see Phelps,* 785 F.2d at 18–19 (FEMA agent's advice that claimant need not file a written report was insufficient to estop the government); *see also Goldberg,* 546 F.2d at 481. The district court's contrary ruling was plainly in error.

██ 2. This conclusion disposes entirely of the claims of Mirsky, the Bosustows and the Stutes. These plaintiffs never submitted formal proofs of loss to FEMA at all and their actions seeking flood insurance benefits must therefore be dismissed. *See Phelps,* 785 F.2d at 16; *West Augusta Dev. Corp. v. Giuffrida,* 717 F.2d 139, 140 (4th Cir.1983); *see also Roberts v. Federal Crop Ins. Corp.,* 158 F.Supp. 688, 694–95 (E.D.Wash.), *aff'd,* 260 F.2d 958 (9th Cir. 1958) (per curiam).

The matter is more complicated as to the remaining plaintiffs, who submitted proofs of loss eventually, but not within 60 days of first learning of the damage. As to these plaintiffs, we must distinguish between timeliness for purposes of maintaining this suit and timeliness for purposes of recovering particular losses. Plaintiffs have alleged that the damage is continuing; that is, the landslide did not plunge their homes into the ocean in one fell swoop, but rather continues to destroy the value of their property, inch by inch, foot by foot, day by day. The proofs they submitted may therefore be timely as to part of their losses, and the failure to file proofs within 60 days of first learning of the landslide bars suit only as to losses occurring more than 60 days before the respective dates of submission.

### B. Limitations Period

Four sets of plaintiffs face an additional hurdle in the statute of limitations on flood insurance claims. The National Flood Insurance Act provides that claimants seeking flood insurance benefits must file actions within "one year after the date of mailing of notice of disallowance or partial disallowance." 42 U.S.C. § 4072. This one-year limitations period is stated in the policy. SFIP, art. VIII, ¶ Q.

██ The NFIP sent plaintiffs Blocker and Mirsky identical letters denying coverage on the basis of the policy's landslide exclusion; the Digbys received a letter denying coverage because "[t]here was no general condition of flooding as defined in your flood policy." Excerpts of Record (ER) at 87. Each letter stated that the claimant had one year from the date of that letter to file suit in the appropriate district court. Plaintiffs' attorney then wrote to the NFIP requesting documentation of FEMA's investigation and providing a list of the Big Rock Mesa homeowners he represented. On July 25, 1984, the NFIP legal director sent the attorney three identical letters in response to this inquiry. These letters, which declined counsel's outstanding offer of representation in plaintiffs' negligence suit against other parties, reiterated that the SFIP did not cover the losses because of the policy's definition of flood and its exclusion as to landslides.

Breslauer received the same July 25 letter from the NFIP legal director. The proof of loss he had previously submitted ended up with a claims supervisor at NFIP,

who sent Breslauer a second letter two months later rejecting the proof of loss. The second letter explained that it was merely a followup to the July letter, asking Breslauer to "[p]lease refer to our denial letter of July 25, 1984. For the reasons stated therein, we reaffirm our previous position of denial." ER at 73. Breslauer was also informed that he had one year from "the date of the denial" to file suit. *Id.*

Each of these plaintiffs brought their actions in district court within one year of the second letter, but not of the first. The district court held that "[t]hese second letters of denial superseded the first notices of denial and are thereby controlling for purposes of the statute of limitations." 658 F.Supp. at 1538. The court relied on *Horeftis v. National Flood Insurers Ass'n*, 437 F.Supp. 794, 796 (E.D.Mich. 1977), which held that the statute of limitations ran from the second denial letter where the FEMA adjuster had assured the claimant after the initial denial that FEMA would reopen his case.

We find the district court's reasoning unpersuasive. The later NFIP correspondence, sent in response to outstanding submissions or further inquiries from the homeowners, merely provided additional explanations for FEMA's position; there is no suggestion that FEMA reopened these cases or ever intended to do so. *See Claremont Aircraft, Inc. v. United States*, 420 F.2d 896, 898 (9th Cir.1970) ("the courtesy of the Air Force in supplying subsequent oral and written explanation should not be held to erase, or vitiate, its previous 'final denial'" and thereby extend the FTCA statute of limitations); *Woirhaye v. United States*, 609 F.2d 1303, 1306 (9th Cir.1979). Holding that FEMA may inadvertently extend the limitations period by answering claimants' inquiries or by considering new information

> would contravene a strong public policy to encourage an insurance company to reconsider its original denial when confronted with potentially new facts. If insurance companies were saddled with the situation that whenever [they] reconsidered an earlier decision it would inau-

gurate a new limitations period, companies would be reluctant to offer policy holders the luxury of a second evaluation.

*Falk v. Federal Ins. Admin.*, 1983 Fire & Casualty Cas. (CCH) 929, 930 (N.D.Cal. 1981); *see Godbold v. Federal Crop Ins. Corp.*, 365 F.Supp. 836, 838 (N.D.Miss. 1973) (statute of limitations not extended by claimant's meeting with insurer to obtain reconsideration).

■ Once FEMA has triggered the statute of limitations by issuing a denial, reconsideration of that denial or responding to further inquiries about the case has no effect on the running of the limitations period. Only where the Federal Insurance Administrator expressly and in writing sets aside the previous disallowance of a plaintiff's claim does a new limitations period commence upon a subsequent denial of the claim. *See* SFIP, art. VIII, ¶ D (provisions may only be waived with "the express written consent of the Federal Insurance Administrator").

Blocker, Mirsky, Breslauer and the Digbys failed to file their lawsuits within one year of FEMA's initial denial of their claims. They were therefore barred from commencing any action based on those claims, and the district court should have dismissed the suits.

## II

We now turn to the merits of the remaining plaintiffs' claims. The SFIP is a single-risk insurance policy: It "only provide[s] coverage for direct, physical loss by flood," SFIP, art. III, which, the policy further explains, must be "directly and proximately caused by a 'flood.'" *Id.*, art. II. At the same time, the SFIP expressly excludes coverage for "[l]oss caused by ... earthquake, land sinkage, land subsidence, landslide, gradual erosion or any other earth movement except such mudslides (i.e., mudflows) or erosion as is covered under the peril of flood." *Id.*, art. III, ¶ A(1).

■ The parties vigorously dispute whether the saturation of the subsurface

soil by rainwater and effluent constituted a flood, and, if it did, whether that flood "directly and proximately" caused plaintiffs' losses by contributing to the reactivation of the landslide. While we have doubts about the district court's decision granting judgment for plaintiffs on these two issues, we need not address them here. Plaintiffs admit that flood waters did not damage their properties directly and that all of their losses were caused by the shifting of the earth beneath their homes. The issue of coverage in this case is therefore determined, in our view, by the SFIP's earth movement exclusion, which expressly precludes coverage for losses caused by landslides. See *Quesada v. Director, FEMA*, 753 F.2d 1011, 1015 (11th Cir.1985) (Tjoflat, J., dissenting) ("the 'earth movement' policy exclusion is dispositive").

██ Plaintiffs argue that even if the landslide was the immediate cause of the damage, the flood was a direct and proximate cause. The district court adopted this reasoning, holding that the SFIP covered the loss because the " 'flood' set in motion the events leading to the damage to plaintiffs' homes.... Although the landslide, an excluded risk, was in a 'strained' sense, the immediate cause of the damage, the water saturation was and is the proximate cause." 658 F.Supp. at 1538. The district court erred. While the regulations and federal common law govern construction of the SFIP, see SFIP, art. X, "Congress did not intend to abrogate standard insurance law principles." *Brazil v. Giuffrida*, 763 F.2d 1072, 1075 (9th Cir.1985). Where the insurer exercises its right to limit coverage of risks, the plain language of that limitation must be observed. *First Nat'l Bank v. Fidelity & Casualty Co.*, 428 F.2d 499, 501 (7th Cir.1970), *cert. denied*, 401 U.S. 912, 91 S.Ct. 878, 27 L.Ed.2d 811 (1971); *General Ins. Co. of Am. v. City of Belvedere*, 582 F.Supp. 88, 90 (N.D.Cal.1984); *see generally* 2 G. Couch, *Cyclopedia of Insurance Law* § 15:48, at 278–82 (rev. 2d ed. 1984). As the courts have all but universally held, federal flood insurance policies do not cover losses stemming from water-caused earth movements. *See Sodowski v. NFIP*, 834 F.2d 653, 657–59 (7th Cir.1987);

*West v. Harris*, 573 F.2d 873, 877 (5th Cir.1978), *cert. denied*, 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979); *Kolner v. Director, FEMA*, 1983 Fire & Casualty Cas. (CCH) 1129, 1131 (N.D.Ill.1983); *Watt v. Giuffrida*, 1984 Fire & Casualty Cas. (CCH) 988, 990 (M.D.N.C.1983); *Stenersen Corp. v. Giuffrida (In re Stenersen Corp.)*, 61 B.R. 702, 708 (Bankr.D.Md. 1986); *cf. Atlas Pallet, Inc. v. Gallagher*, 725 F.2d 131, 137 (1st Cir.1984) (SFIP does not cover damage caused by flood-induced milldam collapse).

Plaintiffs point to the one exception in the case law, *Quesada v. Director, FEMA*, 753 F.2d 1011 (11th Cir.1985). In *Quesada*, the Eleventh Circuit held that the SFIP covered property damage caused by the settlement and compaction of sand fill under plaintiff's home where the settlement resulted from saturation of the fill by water from a tropical storm. The court concluded that although an earth movement may have been the immediate cause "in the most literal sense," the flood was still a proximate cause. *Id.* at 1014. We do not find *Quesada* persuasive. As Judge Tjoflat noted in his dissent, the Eleventh Circuit "expanded the policy's coverage by eliminating the policy exclusion." *Id.* at 1014. In converting a single-risk policy into a multiple-risk policy, he warned, "the majority's interpretation of FEMA's standard policy affords much wider coverage than is contemplated by the National Flood Insurance Program FEMA administers and could result in premiums beyond the pocketbooks of many of our citizens the program was designed to reach." *Id.*

In the most recent appellate decision in this area, the Seventh Circuit also rejected *Quesada*. *Sodowski v. NFIP*, 834 F.2d at 657–59. In *Sodowski*, FEMA paid a claim for the damaged contents of a home inundated by a flood but refused to pay for structural damage "caused by 'settlement of the ground beneath the house.' " *Id.* at 654–55. Rejecting *Quesada's* expansion of the SFIP's coverage as "an act of judicial activism," *id.* at 659, the Seventh Circuit concluded that the earth movement exclusion applies even where the earth move-

ment was itself caused by a flood. We agree.

## Conclusion

The judgment of the district court is REVERSED and the case is REMANDED with instructions that judgment be entered for defendant against all plaintiffs.